UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael Earl JOHNSON, Defendant–
Appellant.

No. 90–7086.

United States Court of Appeals,
Tenth Circuit.

April 15, 1992.

Michael G. Katz, Federal Public Defender, Jenine Jensen, Asst. Federal Public Defender, Denver, Colo., for defendant-appellant.

John Raley, U.S. Atty., D. Michael Littlefield, Asst. U.S. Atty., Muskogee, Okl., for plaintiff-appellee.

Before McKAY, Chief Judge, SETH, Circuit Judge, and FINESILVER, District Judge *.

SETH, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Appellant Michael Earl Johnson appeals from a jury verdict convicting him of one count of possession with intent to distribute crack cocaine, one count of traveling in interstate commerce to promote the possession with intent to distribute crack cocaine, and seven counts of use of the telephone to facilitate commission of a crime. His appeal is limited to two issues. First, whether the district court abused its discretion by denying Appellant's attorney's request to withdraw as counsel. The attorney was with the public defender's office. And sec-

ond, whether there is sufficient evidence to support Appellant's conviction under the Travel Act. For the reasons that follow, we affirm.

During the summer of 1990, Appellant became the target of an undercover operation initiated by the Oklahoma Bureau of Narcotics. An informant agreed to assist law enforcement authorities in exchange for a reduction of her husband's prison sentence. The informant contacted Appellant by phoning a pager number in Texas. When Appellant returned her call she discussed purchasing several thousand dollars worth of cocaine. She told Appellant that she needed the money to pay her husband's attorney's fees.

During June and July 1990, the informant contacted Appellant seven times. The price, availability and quality of the informant's crack cocaine purchase were discussed. Ultimately, Appellant agreed to meet the informant in Texas and then return with her to Oklahoma to show her how to store the cocaine.

On July 24, 1990, the informant met Appellant in a parking lot in Denton, Texas. Three officers of the Oklahoma Bureau of Narcotics had Appellant under surveillance. The informant drove with Appellant across the Oklahoma state line. When they crossed the state line, the car was stopped by the Oklahoma Highway Patrol and 200 baggies containing prepackaged crack cocaine were found on the floor of the car. Appellant was arrested and charged under a nine count indictment.

A plea hearing was scheduled for September 27, 1990. Pursuant to a plea agreement with the government, Appellant was to plead guilty to Count 1 of the indictment and in return Counts 2 through 9 would be dismissed. Count 1 of the indictment charged Appellant with possession of "crack cocaine" with intent to distribute.

At the plea hearing, a dispute arose as to whether Appellant could plead guilty to Count 1 without admitting that the sub-

---

* Honorable Sherman G. Finesilver, Chief District Judge for the District of Colorado, sitting by designation.

stance possessed was "crack cocaine." Appellant's attorney argued that the designation of the substance was important only for sentencing and could be resolved at the sentencing hearing.

When questioned by the court about his intention to plead guilty to Count 1, Appellant indicated that he did not intend to plead guilty to possession of "crack cocaine." Appellant stated that he only intended to plead guilty to possession of an illegal substance.

The court and Appellant's attorney then engaged in what Appellant describes as a "heated dispute." During the "dispute" the court told Appellant's counsel "you just want to argue" and to "be quiet."

Because of Appellant's refusal to acknowledge that the drug was "crack cocaine," the court was reluctant to accept the guilty plea and reserved judgment regarding acceptance of the plea. The court then instructed the parties to submit briefs by the following morning on the issue of whether Appellant could enter a plea of guilty on Count 1 without admitting that the substance in question was "crack cocaine."

At the hearing the next morning, Appellant's attorney announced that Appellant did not wish to plead guilty and that Appellant had requested a trial. At Appellant's request, his court appointed attorney also filed a motion to withdraw as counsel.

The next business day, the court heard argument on the motion to withdraw. The motion was denied and the case proceeded to trial that same day. Appellant was convicted on all nine counts.

■■■ Appellant first contends that the district court erred in denying his attorney's motion to withdraw as counsel. We review a district court's refusal to substitute counsel for an abuse of discretion. *See United States v. Gallop,* 838 F.2d 105, 108 (4th Cir.1988). " 'To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.' " *United*

*States v. Padilla,* 819 F.2d 952, 955 (10th Cir.1987) (quoting *McKee v. Harris,* 649 F.2d 927, 931 (2d Cir.1981)). Another consideration is the timeliness of Appellant's motion. *See United States v. Allen,* 789 F.2d 90, 92 (1st Cir.1986).

Before we address Appellant's specific arguments, we note that the motion to substitute counsel was filed one business day before trial. Appellant admits the inherent problem this creates for the efficient administration of justice by the trial court but argues that the dispute with counsel did not arise until two days before trial. We recognize that there are situations in which a late filed motion for substitution should be granted. This, however, is not one of those situations.

■■■ In his motion to withdraw, Appellant's attorney stated two grounds for substitution of counsel: first, that Appellant believed that his attorney was intimidated by the court and could not continue to act zealously in his defense; and second, that Appellant had lost confidence in his attorney.

Neither of the asserted grounds for substitution constitute "good cause." Appellant did not show a conflict of interest, a breakdown in communication or an irreconcilable conflict. Nothing in the record suggests that Appellant's attorney was intimidated by the court or that counsel could no longer act zealously in Appellant's defense. Appellant merely showed a preference for new counsel. While Appellant certainly has a constitutionally protected right to counsel, "there is no absolute right to counsel of one's choice." *Padilla,* 819 F.2d at 956. *See also United States v. Nichols,* 841 F.2d 1485, 1504 (10th Cir.1988) ("An indigent defendant must be provided with appointed counsel at state expense. But an indigent defendant does not have a right to choose appointed counsel.").

Further, Appellant's asserted grounds for substitution contradict statements Appellant made at the plea hearing. After the exchange between the court and Appellant's counsel, which Appellant characterizes as a "heated dispute," Appellant was asked by the court if he was satisfied with

the services of his attorney. Appellant responded that he was. He stated that his attorney had done all anyone could do to counsel and assist him with his defense.

■ Appellant also argues that the district court erred in not proceeding to make a detailed inquiry into his complaint. After reviewing the record we find that the court was fully apprised of the situation between Appellant and his attorney and that the court made a proper inquiry. Prior to ruling on the motion the court afforded Appellant an opportunity to explain why he wanted new counsel. Appellant first stated that his counsel was "inactive" and "had no preparation." The judge, who had ample opportunity to observe counsel's activity and preparedness, investigated further by specifically asking counsel as to his state of readiness for trial. After Appellant's attorney responded that he had discovery and was prepared for trial the court asked Appellant whether he had anything to add to his motion. Appellant's only response was that he had been represented by two different attorneys from the public defender's office. Under these circumstances, we hold that the trial court made a sufficient inquiry into Appellant's complaint and that Appellant did not show "good cause" for substitution. Therefore, the district court did not abuse its discretion in denying the motion for substitution of counsel.

Appellant also argues that the court erred in not inquiring as to Appellant's desires to proceed pro se. This was not an appropriate inquiry because Appellant's motion to withdraw specifically asked that new counsel be appointed.

■ Appellant's second point on appeal is that there is insufficient evidence to support the jury's conviction under the "Travel Act," 18 U.S.C. § 1952. In reviewing the sufficiency of the evidence, we "view the proof presented in the light most favorable to the government to ascertain if there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, from which a jury might find a defendant guilty beyond a reasonable doubt." *United*

*States v. Sullivan*, 919 F.2d 1403, 1431 (10th Cir.1990).

■ To establish a "Travel Act" violation, the proof at trial must show that the Appellant: "(1) traveled or used facilities in interstate commerce; (2) with the intent to promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on of a prohibited activity; and (3) thereafter attempted to or did in fact engage in one of the proscribed activities." *United States v. Dorrough*, 927 F.2d 498, 502 (10th Cir.1991). The portion of the statute applicable to this case defines a prohibited or unlawful activity a "business enterprise" involving narcotics or controlled substances. 18 U.S.C. § 1952(b)(1). We have previously defined a business enterprise as "a continuing course of conduct rather than sporadic casual involvement in a proscribed activity." *United States v. Kendall*, 766 F.2d 1426, 1434 (10th Cir.1985).

■ Our review of the evidence focuses on whether a reasonable jury could have found that defendant was participating in a business enterprise to distribute crack cocaine. Beginning with the direct evidence, the record clearly establishes a drug transaction in interstate commerce. The confidential informant contacted Appellant and arranged to purchase crack cocaine. The sale was completed after Appellant crossed the Texas–Oklahoma state line. This single transaction in interstate commerce is sufficient to satisfy the interstate requirement under the Travel Act. *See United States v. Davis*, 780 F.2d 838, 843 (10th Cir.1985) ("Where individuals actively undertake interstate travel or the use of interstate facilities in connection with a prohibited activity, even if the interstate component is a minor part of that activity, a Travel Act violation can be sustained.").

Appellant's argument is that the record does nothing more than establish a single drug transaction. He contends that a reasonable jury could not infer that the single drug transaction was part of a continuing course of conduct.

■ After reviewing the record in the light most favorable to the government, we must disagree. Throughout the phone conversations between the Appellant and the confidential informant, Appellant demonstrates a familiarity with crack cocaine purchase, packaging and distribution. He also refers to other individuals which a jury could reasonably infer were other crack cocaine dealers. For example, in the phone conversation on July 5, 1990, he was asked by the informant whether he gave "Baby Boy" and "Murph" the cocaine she was waiting for. Appellant responds that they only had the "last batch" which "they should be out of."

Later in the same conversation, he was asked whether "Gerald" was still dealing with him.

"CI: Oh.. I wsa (sic) talking about that big head punk Gerald.
"J[ohnson]: What happen to him?
"CI: Oh ... um *does he still deal with you?*
"J[ohnson]: Now ... uh
"CI: Oh, really
"J[ohnson]: Naw, he ain't doing nothin'
. . . .
"CI: He's a bum
"J[ohnson]: is that right?
"CI: Yeah
"J[ohnson]: ... *I think he's scared to get back in.*"

Addendum to Appellee's Brief, Exhibit 4, at 3 (emphasis added).

We are satisfied that a jury could infer from the phone conversations between Appellant and the informant that Appellant's involvement in narcotics was more than "sporadic" or "casual."

Accordingly, the decision of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.