**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 18 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES,

      Plaintiff - Appellee,

      v.

JAMES EDWARD SANDERSFIELD,
a/k/a James Eddie Sandersfield, a/k/a
Eddie Sandersfield,

      Defendant - Appellant.

No. 95-6444
(D. Ct. No. CR-95-80-M)
(W. D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before TACHA, BALDOCK, and KELLY, Circuit Judges.

---

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant James Edward Sandersfield appeals his conviction in district court for aiding and abetting in the possession of stolen government property in violation of 18 U.S.C. §§ 641 and 2, and receiving stolen mail matter in violation of 18 U.S.C. §§ 1708 and 2.  Sandersfield argues that the district court erred in: (1) refusing to grant a continuance to obtain new counsel and to admit substitute counsel in violation of his Sixth Amendment right to counsel, and (2) restricting Sandersfield's cross-examination of a key government witness in violation of his Sixth Amendment right to confrontation.  We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

**BACKGROUND**

Early Monday morning on May 29, 1996, postal workers discovered that the Southeast Station of the Oklahoma City Post Office had been burglarized.  Among the items taken were three "bait" money orders, a large mail hamper, some stamps, and a specialized computer.  After one of the money orders was negotiated, postal inspectors traced the money order to Joan Ellen Jenkin, who resided next door to Sandersfield.  As the inspectors approached Jenkin's home, they noticed several muddy footprints in the walkway.  Finding no one home, the inspectors left for the day.

2

Early the next morning, one of the inspectors observed Sandersfield and Jenkin exit her home. The inspector noticed that Sandersfield locked the front door as he left. The inspector watched as Sandersfield entered his home next door and as Jenkin climbed into a van parked nearby. The inspector approached Jenkin and obtained her permission to search the house. Meanwhile another inspector arrested Sandersfield, noticing that his shoes appeared to match footprints left at the post office and the muddy footprints outside Jenkin's house.

The inspectors proceeded to search Jenkin's house by opening the combination lock on Jenkin's front door using Sandersfield's date of birth. In the house, the inspectors found the items taken from the post office. They also found Sandersfield's wallet located in a bedroom.

A grand jury indicted Sandersfield and Ms. Jenkin on two counts of aiding and abetting each other in the possession of stolen government property in violation of 18 U.S.C. §§ 641 and 2 (Counts One and Three), and aiding and abetting each other in the receipt of stolen mail matter in violation of 18 U.S.C. §§ 1708 and 2 (Count 4). The grand jury also indicted Ms. Jenkin with one count of falsely making and forging a material endorsement on a money order in violation of 18 U.S.C. § 500 (Count 2).

On the morning of the first day of trial, Sandersfield requested a continuance to retain different counsel. The court denied defendant's request,

finding that the attempt to substitute counsel was untimely and would cause undue cost and delay. The court also noted that Sandersfield had not yet retained new counsel, that Sandersfield's current counsel was prepared to go to trial, and that Sandersfield would not be prejudiced by the denial of a continuance. After the trial began, Sandersfield's attorney, at his client's request, filed a motion to admit new counsel. Again, the court denied the request.

At trial, the prosecution's key witness against Sandersfield was Ernest Draper. Draper was a cellmate of Sandersfield at the Oklahoma County Jail. Draper testified that Sandersfield told him that he and two others burglarized the post office and stole money orders, computers, and other items. The court refused to permit the defense to question Draper about the nature of the state charges pending against him. Instead, the court allowed questions regarding whether Draper had been promised leniency in exchange for his testimony. Draper testified that he had not received anything other than being transferred to a different cell.

The jury acquitted Sandersfield on Count One but convicted him on Counts Three and Four. This appeal followed.

**DISCUSSION**

## I.   RIGHT TO COUNSEL

Sandersfield contends that the district court erred in denying his motions for a continuance to obtain substitute counsel and to admit new counsel after the trial began.  We review a district court's refusal to substitute counsel for an abuse of discretion.  United States v. Johnson, 961 F.2d 1488, 1490 (10th Cir. 1992).  "While we recognize the right to choose and be represented by one's preferred attorney is encompassed by the Sixth Amendment, the Supreme Court reminds us that the 'essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.'"  United States v. Mendoza-Salgado, 964 F.2d 993, 1015 (10th Cir. 1992) (quoting Wheat v. United States, 486 U.S. 153, 159 (1988)).  When a defendant seeks a continuance to retain substitute counsel, courts must "balance a defendant's constitutional right to retain counsel of his choice against the need to maintain the highest standards of professional responsibility, the public's confidence in the integrity of the judicial process and the orderly administration of justice."  United States v. Collins, 920 F.2d 619, 626 (10th Cir. 1990).

In reviewing the district court's discretionary decision to deny a continuance to obtain substitute counsel, we look to a number of factors,

including: (1) whether the request was timely; (2) whether the continuance would have inconvenienced the witnesses, the court, counsel, or the parties; (3) whether other continuances had been granted; (4) whether legitimate reasons existed for the delay; (5) whether defendant contributed to the circumstances giving rise to the request; (6) whether defendant had other competent counsel prepared to try the case; (7) whether rejecting defendant's request caused identifiable prejudice to his case, constituting material or substantial harm; and (8) whether the complexity of the action or other relevant factors necessitated the delay. See Mendoza-Salgado, 964 F.2d at 1015; Johnson, 961 F.2d at 1490. "Because the factors influencing a particular case often vary, the district court enjoys broad discretion on matters of continuance, even when the parties implicate Sixth Amendment issues." Mendoza-Salgado, 964 F.2d at 1015.

Applying these factors, we conclude that the district court did not abuse its discretion in denying defendant's motion for a continuance to obtain substitute counsel. The record shows that Sandersfield's attorney requested a continuance on the morning the trial was to begin. Because Sandersfield had known about the trial date for nearly two months, the request was untimely and would have inconvenienced the other participants in the trial. Sandersfield could give no reason for his last minute request other than that his family wanted to hire a different attorney and had not yet done so. Sandersfield's attorney made

numerous attempts before trial to obtain the names of other attorneys Sandersfield's family might retain, but as of the morning of trial, no other attorney had been hired. Finally, the court determined that Sandersfield's attorney was prepared to try the case, and Sandersfield has failed to identify any prejudice to his case as a result of the representation. Although Sandersfield contends that his attorney was not prepared to try the case because of a "complete breakdown in his communication with Mr. Sandersfield and his family," App't. Br. at 14, the record does not support his contention. Accordingly, we hold that the district court did not abuse its discretion in denying Sandersfield's motion for a continuance in order to obtain substitute counsel.

Similarly, we conclude that the district court did not abuse its discretion in refusing to admit new counsel after the trial began. "Absent a showing the district court unreasonably or arbitrarily interfered with defendant's right to counsel of choice, we believe reversal is appropriate only when defendant identifies specific prejudice resulting from denial of preferred counsel, and when such prejudice renders the trial fundamentally unfair." Mendoza-Salgado, 964 F.2d at 1016 (citing United States v. Cronic, 466 U.S. 648, 662 n. 31 (1984)). In this case, the defendant has identified no specific prejudice resulting from the denial of new counsel. On the contrary, the district court stated that he was concerned that admission of new counsel after the start of the trial might cause

7

prejudice to both Sandersfield and Jenkin. Further, in denying defendant's motion, the district court relied on the potential for delay and "the interest of an efficient administration of justice." Because the district court's refusal to admit new counsel was not arbitrary or unreasonable and because defendant has not identified prejudice resulting from the denial, we conclude that the district court did not abuse its discretion in refusing to admit new counsel once the trial began.

## II. RIGHT TO CONFRONT WITNESSES

Mr. Sandersfield next argues that the district court violated his right to confrontation by restricting his cross-examination of Earnest Draper concerning the nature of a pending state felony indictment against him. We review an alleged violation of the Sixth Amendment right to confrontation de novo. Hatch v. Oklahoma, 58 F.3d 1447, 1467 (10th Cir. 1995), cert. denied, 116 S. Ct. 1881 (1996).

"[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986). However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about . . .

harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." Id. at 679.

In this case, the defense sought to cross-examine Draper about the nature of his pending state indictment, arguing that the seriousness of the state charges created a "prototypical form of bias" favoring the prosecution. Sandersfield contends that Draper had an obvious incentive to help the federal prosecution because if convicted on the state charges, he faced life imprisonment.

We addressed a similar argument in United States v. Ellzey, 936 F.2d 492 (10th Cir. 1991). In that case, we held that the district court did not abuse its discretion in restricting the defendant's cross-examination of a government witness concerning a pending state indictment. Id. at 496. We noted that the defendant failed to offer any evidence of an actual agreement with the prosecution or that the witness had a subjective hope or belief that he would benefit from testifying. Id. We emphasized that the defendant had "shown only the existence of an indictment in another jurisdiction being prosecuted under separate prosecuting authority." Id. Thus, we held that the state indictment did "not establish the direct link between the witness's testimony and potential reward or retribution by the charging prosecution." Id. at 497.

As in Ellzey, the federal prosecutors in this case had no direct authority or influence over the state charges pending against Draper. The defense also failed

9

in its repeated attempts to elicit testimony from Draper that he was testifying against Sandersfield in the hope of receiving favorable treatment. On the contrary, Draper testified that he had not been promised anything for his testimony, that he had not asked for leniency from the prosecution, and that he was unaware of any deals with any law enforcement agency that would result in favorable treatment. R. Vol. IV, at 509-511, 524. Because Sandersfield has not satisfied his burden of showing evidence from which an appropriate inference of a "prototypical form of bias" could be drawn, the district court did not abuse its discretion in restricting Sandersfield's cross-examination.

AFFIRMED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge