**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ROBERTO RAMOS, (originally indicted
as Roberto Ramos then amended to reflect
true name of Roberto Rivera Ramos in
California) a/k/a Robert Rivera Ramos;
a/k/a Robert Ramos,

      Defendant-Appellant.

No. 00-5089
(D.C. No. 99-CR-66-C)
(Northern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **KELLY**, Circuit Judge

A jury sitting in the United States District Court for the Northern District of

Oklahoma convicted Roberto Ramos ("the defendant") of conspiracy to possess with an

intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 and 21 U.S.C. §

841(a)(1) and (b)(1)(A)(ii) and (viii). The defendant was later sentenced to imprisonment

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

for 235 months, five years supervised release, and a $100 special monetary assessment. The defendant appeals his conviction and sentence. On appeal, counsel raises one ground for reversal, which he frames as follows: "The district court erred when it failed to inquire into the possibility of a conflict of interest between Ramos and his appointed trial counsel prior to trial." In this regard, we find no reversible error, and therefore affirm.

Since the sufficiency of the evidence is not challenged on appeal, we need not detail the evidence adduced by the government at trial. It is sufficient for present purposes to simply state that it was the government's theory of the case that the defendant was a "mule" or courier of methamphetamine from suppliers in California for delivery to mid-level drug dealers in the Tulsa, Oklahoma, area, and then he collected cash payments from the dealers and returned the cash thus received to his suppliers in California.

On June 21, 1999, the defendant appeared before a Magistrate Judge with a court appointed attorney (Gordon S. Harman ("Harman")) and he entered a plea of not guilty. The district court received a letter, dated July 15, 1999, from defendant requesting a new attorney. (The letter itself is apparently not in the record on appeal.) On July 20, 1999, Harman filed a motion with the district court to withdraw as defendant's attorney, stating therein that the "defendant has demanded a replacement attorney and refuses to discuss the case against him since learning that his attorney [Harman] cannot guarantee him a specific and/or certain sentence upon entering a plea in the case." On the face of that motion, the district court on July 22, 1999, wrote "Motion to Withdraw as Counsel

Denied."

On July 29, 1999, the district court received a pro-se "Motion to Replace Counsel" from the defendant, and as grounds therefor he wrote as follows:

- - - - Facts - - - -
(1) Counsel Gordon S. Harman has been asked for lab results of the drugs. He stated it does not matter, USSC states that the type of drug is used to base your time in the Guidelines. My attorney has offered me a plea bargain. This is ineffective do to lab results.
(2) I have asked my attorney to remove me from the inditement and be placed on a separate inditment alone. Being I did know nothing of this. He said this can not be done. I fill my counsel is not working for my behalf, due to a plea bargain.
(3) I have asked counsel for lab reports a numberous amout of times he states that this does not matter.
(4) My attorney has failed to file any motions to supress. I fill he has not represented me in this case. Its possible for a plea bargain to be made in this case but will not be able to happen with this counsel , and will not have a fair trial due to counsel not filing proper motions on time.
Werefore Defendant prays that the court will remove counsel at this time and grant motions to be filed.

On August 17, 1999, defendant was arraigned before a Magistrate Judge on a superseding indictment, his attorney, Harman, being present, at which time defendant pleaded not guilty and asked that a new attorney be appointed. On August 20, 1999, defendant filed another pro se "motion to withdraw attorney," in which he claimed that Harman had "lied" to him and was "work[ing] with the prosecution." That motion was denied on September 30, 1999. On August 26, 1999, Harman filed a second "motion to withdraw as attorney of record," stating, *inter alia,* that defendant had requested him to

- 3 -

arrange for a plea bargain but had insisted that he be given a "guarantee" of a "specific and/or certain sentence upon entering a plea in this case." That motion was denied by minute order on September 7, 1999.

Some time in August, 1999, the district court apparently made a phone call to the Federal Public Defender's office and asked that office "to look into the matter to try to determine if new counsel would be appropriate." By an "after-the-fact" affidavit filed on January 3, 2001, by the Public Defender, he stated that, upon the telephone request of the court, he and Harman had conferred with defendant for several hours in the local jail on or about "late August or early September [1999]" about the matter of new counsel and he concluded his affidavit with the following comment:

> 5. As a result of meeting with Mr. Ramos and discussing his grievances, I concluded that the problem was not that irreconcilable differences existed between Mr. Ramos and Mr. Harman but rather that Mr. Ramos was frustrated about the potential sentence he was facing should he be convicted and the failure to achieve a plea agreement that would ensure a sentence that Mr. Ramos believed was appropriate. Mr. Harman appeared to have done as much as possible on Mr. Ramos' behalf and that there was no reason to believe Mr. Ramos' assertions that Mr. Harman had failed to do certain things, such as provide copies of the discovery materials. I reached the conclusion that the same issues would exist even if new counsel was appointed.

> 6. After the meeting, I then contacted Judge Cook and informed him of what had happened and of my impressions regarding the attorney-client relationship. While Mr. Ramos still wanted new counsel, it did not seem to me that substitution of counsel would solve the problems raised in the motions. Rather, Mr. Ramos would still want a plea

agreement that the government was not going to offer and thus new counsel would be unable to obtain, which was my impression was the reason for Mr. Ramos' displeasure with Mr. Harman.

A hearing was held on September 30, 1999, at the conclusion of which the district court, *inter alia,* denied all pending motions for new counsel. During that hearing, Harman advised the court as follows:

> THE COURT: Yes, Mr. Harman?
> MR. HARMAN: Not necessarily a matter of legal issue, but I think I'm obligated to advise the Court of some facts in regard to Mr. Ramos since we've had some problem in his understanding the guidelines and how the process proceeds.
> I want to advise the Court that I have reviewed all of the discovery information that the government has provided. I have made copies of everything there that involves or pertains to Mr. Ramos in addition to some documents that do not; have provided him copies of those, some of which I provided very early on, within the first couple of weeks, and as they became available and as the government developed those, provided others, including copies of transcriptions of the tapes, telephone conversation, wires, everything involved. I provided him a copy of a tape recorder to listen to the tapes while in custody.
> THE COURT: Copy of a tape recorder to listen to them?
> MR. HARMAN: Yes, sir, I made special provisions with the –
> THE COURT: I can understand copies of tapes, but I never heard of a copy of a tape recorder.
> MR. HARMAN: I'm sorry. I provided a tape recorder. I misspoke. Provided him a tape recorder for a short period of time. It malfunctioned in that the batteries died. I offered to replace those, and he said it wasn't necessary, he had heard from other inmates what was on them, he knew what was on the tapes and they correlated with the transcripts. Therefore I feel he is well informed as to the discovery that the government has.

- 5 -

I have gone over the guidelines with him more than once, showing him an anticipated end result of the guideline sentencing upon plea, which was discussed early on. I also provided him a guideline schematic of what he could expect as a sentence if he were to go to trial and be convicted, and told him at the same time that if he went to trial and was not convicted, of course it wouldn't apply.

I saw nothing in the discovery that compelled me to file any motions since everything was pretty plain. He made a confession early on to certain matters which were something I felt couldn't be controverted, so I saw no need for motions, although the motions were considered at length numerous times, and rather than file frivolous motions and take up the Court's time, none were filed because none were appropriate.

But I want the Court to know that in light of the things that have arisen with Mr. Ramos, that every effort has been made to inform him.

THE COURT: This letter was sent last July.

MR. HARMAN: Yes, sir.

THE COURT: And it probably was when matters hadn't been completed.

MR. HARMAN: As Your Honor knows from my motion to withdraw, his initial problem was he didn't want to cooperate in a Rule 11 conference unless we could guarantee a sentence. That was attempted three times, aborted twice, and we did get there the third time, and that was, I felt, somewhat successful on his part in that he revealed information. However, it was rejected by the government.

THE COURT: Thank you.

On October 21, 1999, the district court received an additional letter from defendant, still requesting a new attorney. Jury trial thereafter ensued on November 16, 17, and 18, 1999, with Harman representing defendant.

At the outset of our discussion it should be emphasized that we are here dealing with a pretrial request that court appointed counsel be removed from the case and new

- 6 -

and different counsel be appointed.  We are not here concerned with a <u>post trial</u> proceeding where a defendant claims that he had ineffective assistance of counsel because of a conflict of interest.

The Sixth Amendment guarantees one's right to have the assistance of counsel in a criminal proceeding.  This applies to both the rich (persons who can pay for their own counsel) and the poor (persons who cannot pay).  The right to counsel means the right to "effective" assistance of counsel.  An attorney who has a "conflict of interest" vis-a-vis his client's interest, is presumptively "ineffective." *Holloway v. Arkansas,* 435 U.S. 475, 487-91 (1978) and *Selsor v. Kaiser,* 81 F.3d 1492, 1497 (10th Cir. 1996).  A conflict of interest most often occurs when one attorney is representing two or more defendants who themselves have conflicting interests.  But that is not the only fact situation in which there can be a conflict of interest.  *Osborn v. Shillinger,* 861 F.2d 612, 625 (10th Cir. 1988).  Conceivably there could be a conflict of interest between the attorney and the client.  When the matter of a probable risk of conflict of interest is raised before trial, a court has a duty to make appropriate inquiry to ascertain whether there is such a conflict of interest as would require withdrawal of counsel and appointment of new counsel or whether the risk is too remote to require substitute counsel.  *Holloway,* 435 U.S. at 484.  A personality conflict is not a conflict of interest.  *Hale v. Gibson,* 227 F.3d 1298, 1313 (10th Cir. 2000).

In the present case, the defendant and his attorney, Harman, who was appointed

under the Criminal Justice Act, both advised the district court on several occasions of the disagreement existing between the defendant and Harman. The main area of disagreement, as we understand it, was the fact that the defendant, though not adverse to entering into a plea agreement with the government wherein he would plead guilty to some charges, wanted, in return, a "specific and/or certain" term of imprisonment set forth in the agreement, and that when advised such was not possible, the defendant refused to accept this fact. Counsel in his brief suggests that the defendant believed his attorney was "colluding" with the prosecution. The defendant in one of his pro se pre-trial motions did state that he believed Harman was "work[ing] with the prosecution." We note that most plea bargains require considerable negotiation between the prosecution and defense counsel.

Be that as it may, the district court in the present case thereafter requested the Federal Public Defender to look into the matter and report back, which the defender did, after checking with the prosecutor and after interviewing the defendant for several hours in the presence of his appointed counsel. The defender memorialized the results of his investigation in an affidavit which is a part of the record on appeal. Then on September 30, 1999, the district court held a hearing at which time defendant's various motions for substitute counsel and Harman's several motions to withdraw were discussed, along with other pending pre-trial matters. At that time Harman made a detailed statement to the court as to the area of disagreement between defendant and himself. It was in this setting

that the district court denied or perhaps reaffirmed its earlier denials of Harman's motions to withdraw and defendant's motions for substitute counsel. As indicated, Harman thereafter represented defendant at his trial on November 16, 17 and 18, 1999. At that time, defendant elected not to testify and counsel called no witnesses. The defendant's theory of the case was that many of the government's witnesses, who were co-conspirators, had testified falsely in the hope of receiving favorable treatment at their own sentencing.

It is doubtful that defendant's several motions for substitute counsel set forth a colorable claim of a conflict of interest. But in any event, contrary to counsel's suggestion, the district court did make adequate inquiry into the matter and did not abuse its discretion when it denied defendant's motion for substitute counsel.[1]

By post trial motion, the defendant claimed that Harman's representation of him at trial was ineffective. Hearing was held on that motion and the district court concluded that Harman's representation of defendant was not unconstitutionally ineffective. Defendant has not appealed that ruling of the district court.

---

[1]"We review a district court's denial of a motion to appoint substitute counsel for an abuse of discretion." *United States v. Anderson*, 189 F.3d 1201, 1210 (10th Cir. 1999), citing *United States v. Johnson,* 961 F.2d 1488, 1490 (10th Cir. 1992).

Judgment affirmed.

Entered for the court,


Robert H. McWilliams
Senior Circuit Judge