**F I L E D**

**UNITED STATES COURT OF APPEALS**

**JAN 7 2003**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

      v.

BILLY EARL WYNNE, JR.,

       Defendant - Appellant.

No. 01-6386
D.C. No. CR-00-84-R
(W.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **LUCERO** and **HARTZ**, Circuit Judges.

Defendant appeals his conviction for unlawful possession of a firearm, in violation

of 18 U.S.C. § 922(g)(8), and for making a false statement in connection with the

acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6). We exercise jurisdiction

pursuant to 28 U.S.C. § 1291 and AFFIRM.

*I. Background*

On June 21, 2000, a federal grand jury in the Western District of Oklahoma

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

returned a one-count indictment against the defendant, charging him with possession of a firearm while under a restraining order, in violation of 18 U.S.C. § 922(g)(8). The grand jury returned a superseding indictment on May 1, 2001, adding the charge of making a false statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6).

The defendant, Billy Earl Wynne, Jr., waived his right to a jury trial and elected to proceed with a bench trial, which was held on August 20, 2001. Following the presentation of evidence, the trial court took several matters under advisement. On October 19, 2001, the court entered findings of guilt on both counts and sentenced Wynne to two years of probation on each count, to run consecutively. From this judgement, the defendant timely filed a notice of intent to appeal.

The circumstances leading to the present case began in September 1994 when Lisa Foreman[1] obtained a temporary restraining order[2] against Wynne. Wynne stipulated at trial that he received a copy of a temporary VPO in 1994. This document provided Wynne with notice as to the date and time of the hearing for the 1994 VPO. This hearing was scheduled for September 20, 1994. Foreman appeared at this hearing, but the

---

[1] Although her name appears as "Lisa Wynne" in many of the court documents in this case, Lisa Wynne has since remarried and is now known as Lisa Foreman. This order and judgment refers to her present name.

[2] Oklahoma law refers to such orders as Victim Protective Orders, or VPOs, and we use this term as a shorthand because the federal statute at issue, 18 U.S.C. § 922(g)(8), uses a lengthy definition of the types of protective orders it covers. VPOs fall within this definition.

defendant did not appear. The final order was entered against Wynne by default. In 1997, Foreman went to the duty judge to have the VPO amended to reflect her new address.[3]

During the trial that resulted in this appeal, Wynne was questioned by the United States Attorney regarding his testimony at a hearing held on April 22, 1999, at which he sought a VPO for himself against Foreman. Wynne testified at that hearing that he knew about the 1994 VPO and that he had received a copy of the 1997 amended VPO updating Foreman's address. At this hearing, Wynne also testified that as of April 22, 1999, he thought that the VPO was still pending against him. At no point prior to his indictment did Wynne seek review of the VPOs.

On April 2, 1999, Wynne purchased a pistol from a licensed firearms dealer. In order to complete this transaction, federal law required Wynne to complete an ATF Form 4473. The first page of the form contains Question No. 9-J, which asks: "Are you subject to a court order restraining you from harassing, stalking, or threatening an intimate partner or child of such partner?" Wynne's response to this question was "No."

On April 5, 2000, law enforcement officers received information from a 911

---

[3] Wynne cited to this court to the July 2, 2001, decision of the Oklahoma County District Court finding that the 1997 amendments replaced the 1994 VPO. The Oklahoma court further stated that the "1997 VPO" should be vacated. Any such determination is irrelevant to these proceedings. *See Lewis v. United States*, 445 U.S. 55 (1980) (holding that a person may be convicted of being a felon in possession of a firearm even when underlying felony conviction is defective).

dispatcher that a woman had called to report that her ex-husband was following her and had a gun in his vehicle. The dispatcher also provided a description of the vehicle the ex-husband was driving and its tag number.

Oklahoma Highway Patrol Officer Barry Ross saw the defendant's truck and pulled it over. Officer Ross testified that he probably patted down the defendant and looked into the driver's area of the vehicle, but otherwise did not search it. He held Wynne until Oklahoma City police arrived a few minutes later. When Oklahoma City police arrived, they asked Wynne if he had a gun in his truck. Wynne responded that he did, and Oklahoma City police officer Robert Russell asked Wynne for consent to search the vehicle. Wynne responded, "That's fine." At the time of this conversation, Wynne was in the back of an Oklahoma City police car.

Officers then searched the truck and found a gun in the console, where Wynne had told them it would be. Wynne was arrested for the state charge of transporting a loaded firearm in his vehicle. The vehicle was impounded briefly and inventoried.

## II. Discussion

Wynne challenges the validity of his conviction on six grounds. First, Wynne contends that §§ 922(g)(8) and 922(a)(6) are facially unconstitutional or unconstitutional as applied under the Second Amendment. Second, Wynne makes the same arguments with regard to his Fifth Amendment rights. Third, Wynne asserts that the officers' questioning of him and search of his vehicle were constitutionally impermissible. Fourth,

Wynne claims that the notice and hearing requirements of §§ 922(g)(8) and 922(a)(6) were not met. Fifth, Wynne asserts that the district court's failure to dismiss the indictment resulted in selective prosecution. Sixth, Wynne contends that the district court violated his Sixth Amendment right to effective assistance of counsel when it refused to allow his counsel to withdraw. We consider, and reject, each assertion in turn.

A.    *Standard of Review*

This court reviews constitutional challenges to a statute de novo. *United States v. Haney*, 264 F.3d 1161, 1163 (10th Cir. 2001). We also review de novo the district court's resolution of questions of law, applying "the same [standard] as that applied by the trial court in making its initial ruling." *Gledhill v. State Bank (In re Gledhill)*, 164 F.3d 1338, 1340 (10th Cir. 1999). We review mixed questions of fact and law "under the clearly erroneous or de novo standard, depending on whether the mixed question involves primarily a factual inquiry or the consideration of legal principles." *Armstrong v. Comm'r*, 15 F.3d 970, 973 (10th Cir. 1994).

B.    *Alleged Second and Fifth Amendment Violations*

Wynne's Second Amendment challenge must fail in light of our previous decisions. *See United States v. Bayles*, 310 F.3d 1302, 1307 (10th Cir. 2002); *United States v. Haney*, 264 F.3d 1161, 1165 (10th Cir. 2001); *United States v. Baur*, 235 F.3d 561, 564 (10th Cir. 2000). We have previously held that "in order to establish a violation of the right to bear arms under [the] Second Amendment, one must establish the

following elements:  (1) that he is part of a state militia; (2) the militia, and his participation therein, is 'well regulated' by the state; (3) the guns in question are used by that militia; and (4) his possession of the guns was reasonably connected to his militia service." *Bayles*, 310 F.3d at 1307.  In support of his claim, Wynne merely asserts that he is a member of the federal militia "because he is not exempted from duty of service in the militia if he were called to service."  Because Wynne has failed to offer any credible evidence or argument responsive to the elements set forth in our previous cases, his Second Amendment challenge is without merit.

Wynne's Fifth Amendment challenge must also fail.  We recently rejected a virtually identical Fifth Amendment challenge to § 922(g)(8) in *United States v. Reddick*, 203 F.3d 767 (10th Cir. 2000).[4]  Every circuit court that has considered a due process challenge similar to Wynne's has also rejected it.  *Id*. at 770 (citations omitted).  Wynne's argument on this point is premised entirely on the bare assertion that *Reddick* is factually distinguishable from the instant case.  We disagree.

Wynne's due process challenge to § 922(a)(6) must also fail.  The Supreme Court has held that § 922(a)(6) "clearly proscribes [a] petitioner's conduct and accord[s] him fair warning of the sanctions the law placed on that conduct."  *Huddleston v. United States*, 415 U.S. 814, 831 (1974).  Here, as in *Huddleston*, "[the defendant] was not short

---

[4]  While his brief is not clear on this point, Wynne apparently incorporates into his due process challenge his argument that no valid VPO existed at the time of his arrest to sustain his conviction.  We address this issue in Part D, *infra*.

of notice that his actions were unlawful." *Id.* Because he was accorded fair notice of the statute, Wynne's due process challenge is without merit.

### C. *Questioning of Wynne and Search of the Vehicle*

Wynne raises several constitutional challenges to the search of his vehicle and the questions he was asked by police. According to the record, a 911 dispatcher notified law enforcement officers that a woman had called to report that her ex-husband was following her and that he had a gun in his vehicle. The dispatcher provided the officers with a description of the vehicle and the tag number. The Highway Patrol Officer who saw the vehicle and pulled it over testified that he probably patted the defendant down but did not search the inside of the vehicle. Once the Oklahoma City Police arrived a few minutes later, they asked the defendant if he had a gun in his truck; he responded that he did. Wynne was in the back seat of the patrol car when asked about the weapon.

Wynne first alleges that the officers were required to provide him with *Miranda* warnings prior to inquiring about the gun. Two requirements must be met before the *Miranda* rule applies: (1) the suspect must be in custody, and (2) the questioning must meet the legal definition of interrogation. *United States v. Ritchie*, 35 F.3d 1477, 1485 (10th Cir. 1994). Whether a defendant is in custody for purposes of *Miranda* depends on the totality of the circumstances. *United States v. Torres-Guevara*, 147 F.3d 1261, 1266 (10th Cir. 1998). After hearing defendant's motion to suppress, the district court concluded that under the circumstances of this case, *Miranda* warnings were not required.

"In reviewing the denial of a motion to suppress, we accept the trial court's factual findings unless clearly erroneous and view the evidence in the light most favorable to the government." *United States v. Simpson*, 152 F.3d 1241, 1246 (10th Cir. 1998).

Although the defendant was arguably in custody, we need not reach this determination. Even if Wynne was in custody, these circumstances fall squarely within the public safety exception to the *Miranda* rule set forth in *New York v. Quarles*, 467 U.S. 649, 655-56 (1984). Under *Quarles*, officers may – without violating the suspect's constitutional rights – ask a suspect in custody whether he has a weapon before Miradizing him, as long as the question is "necessary to secure their own safety or the safety of the public." *Id.* at 659. The purpose of the exception is to "free [police officers] to follow their legitimate instincts when confronting situations presenting a danger to the public safety." *Id.* Here, the officers were responding to a report that Wynne, armed with a gun, was following his ex-wife. Under the circumstances, we agree with the district court that the officers "would have been remiss, both for the protection of the public, of the officers, and certainly for [Wynne's ex-wife] . . . to not inquire whether or not there was a weapon in the car." We therefore affirm the district court's decision to deny the motion to suppress based on the alleged *Miranda* violation.

Wynne also alleges that the search violated his Fourth Amendment rights. In *United States v. Holt*, 264 F.3d 1215 (10th Cir. 2001), we were confronted with facts very similar to those presented in this case. In *Holt*, we held that an officer conducting a

traffic stop does not violate the Fourth Amendment rights of the person stopped merely by inquiring about the presence of loaded weapons in the vehicle. *Id.* at 1223. We reasoned that, once the stop was complete, the officers could reasonably expect the person stopped to return to his vehicle, where he would "once again have access to any weapons in it." *Id*. at 1225. Applying this same rationale, we hold that the Oklahoma City police officers did not violate Wynne's Fourth Amendment rights when they inquired about the presence of a gun. The fact that Wynne had been placed in the police car does not alter this conclusion, because the officers could have reasonably suspected that Wynne would return to the vehicle and gain access to any weapons within it. *See id.* at 1224-25. Accordingly, the district court properly refused to suppress Wynne's statement and the weapon.

> D. *Requirements for Conviction under §§ 922(g)(8) and 922(a)(6)*

Wynne also appeals his conviction under §§ 922(a)(6) and 922(g)(8) based on alleged defects in the VPO necessary to sustain his conviction. He argues that the 1997 amendments to the 1994 VPO replaced the valid 1994 VPO with a defective one, leaving no VPO in place to sustain his conviction. We disagree.

> 1. *18 U.S.C. § 922(g)(8) – Knowing Possession of a Firearm*

The defendant was charged with possession of a firearm while subject to a victim protective order in violation of 18 U.S.C. § 922(g)(8). This statute provides:

> (g) It shall be unlawful for any person –
> . . . .

(8) who is subject to a court order that –

> (A) was issued *after a hearing* of which such person received *actual notice*, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
>
> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;

to . . . possess in or affecting commerce, any firearm or ammunition . . . (emphasis added) .

Wynne maintains that (1) the 1997 amendments to the 1994 protective order resulted in a new VPO, (2) this new VPO does not meet the requirements of the statute because he was not given notice and a hearing before it was entered against him, and (3) this leaves no valid VPO in place to sustain his conviction under § 922(g)(8). We agree at the outset that, were it the sole basis upon which the district court convicted Wynne, the form upon which the duty judge amended the 1994 VPO in 1997 does not appear to meet the requirements of the statute because Wynne was not given notice or a chance to be heard. The district court, however, considered the 1997 change-of-address amendment irrelevant to § 922(g)(8)'s notice and hearing requirements, basing the conviction on the 1994 order. We agree with the district court.

The 1994 VPO Foreman obtained was entered after notice was provided to Wynne.

- 10 -

Thus, Wynne had an opportunity to be present and chose not to be. Because Wynne was given notice and an opportunity to be heard, the 1994 VPO complies with the notice requirements of § 922(g)(8). The district court found that the attempted amendment in 1997 had no bearing on the validity of the 1994 VPO. The effect of the duty judge's 1997 change-of-address amendment on the valid 1994 VPO is a mixed question of law and fact. Because this question is primarily a factual inquiry, we review the district court's findings for clear error. *Armstrong v. Comm'r*, 15 F.3d 970, 973 (10th Cir. 1994).

Oklahoma law provides that "[w]ithin ten (10) days of the filing of the petition [for a protective order,] the court shall schedule a full hearing on the petition." OKLA. STAT. ANN. tit. 22, § 60.4.B.[5] "At the hearing, the court may grant any protective order to bring about the cessation of domestic abuse against the victim or stalking or harassment of the victim." *Id*. § 60.4.C. Regarding the continuing validity of a VPO, the statute provides that "[a]ll orders issued pursuant to the provisions of the Protection from Domestic Abuse Act, Section 60 et seq. of this title, shall have statewide validity, unless specifically modified or terminated by a judge of the district courts." *Id.* § 60.7.

---

[5] The Oklahoma legislature amended section 60 of title 22 in 2001. We quote here from the version in effect in 1997, when the Oklahoma District Court amended Foreman's address, rather than the amended version. Under a new provision of the amended statute, VPOs imposed on or after November 1, 1999, pursuant to subsection C of section 60.4, expire three years after the Oklahoma court imposes them unless "extended, modified, vacated or rescinded." OKLA. STAT. ANN. § 60.4.H. Because Wynne's conviction was based on the 1994 VPO, and not on a VPO issued on or after November 1, 1999, the three-year limitation period is immaterial to this case, as are the other changes.

- 11 -

The questions we must answer, then, are (1) whether the 1997 change-of-address amendments destroyed the 1994 VPO and created a new one, the validity of which would become a separate question, and (2) whether the 1997 amendments specifically modified the 1994 VPO, requiring an analysis under the Oklahoma statutes regarding its continued validity. As to the first question, the 1997 amendments clearly could not have "created" a new VPO because § 60.4 requires a "full hearing," and such hearing was clearly never even contemplated prior to the duty judge's changing of Foreman's address.

As to the second question, the record indicates that Foreman sought no modification of the terms of the VPO; she was simply attempting to update the form to reflect her new address. Foreman took the 1994 VPO to the office of the judge handling the VPO docket and asked his staff to have her address changed. The record indicates that she had no contact with the judge and that she did not fill out a petition for a protective order – one of the requirements for obtaining a new protective order. In addition, the form resulting from the 1997 amendments contains the handwritten word "amended" in the heading and the handwritten notation "amending plaintiff's and defendant's address."[6]

---

[6] While the 1994 VPO and the 1997 amendment both require the judge to check boxes indicating the obligations imposed by the protective order, there is a discrepancy in the boxes checked on the respective forms. The discrepancy, however, is merely the result of a transcription error. The duty judge who entered the 1997 amendments did not properly transcribe Wynne's obligations from the 1994 VPO to the new form. Thus, had the government attempted to base the conviction upon the 1997 amendment, Wynne's argument that the notice and hearing requirements of § 922(g)(8) were not met might

Based on the facts presented, the district court's finding was not clearly erroneous. We agree with the district court that the 1997 attempted address change did not extinguish the 1994 VPO and replace it with a new VPO; nor did the 1997 amendments "specifically modify" the 1994 VPO. Indeed, for purposes of § 922(g)(8)'s notice and hearing requirements, the 1997 change-of-address amendment had no effect at all, and the 1994 VPO was in full force and effect when Wynne purchased the firearm in 1999.

Having concluded that the 1994 VPO was still in effect at the time Wynne purchased the firearm, we must consider whether the 1994 VPO meets the requirements of § 922(g)(8). In order to convict a person under this statute, the United States must prove that the defendant possessed a firearm while under a court order satisfying three requirements: (1) the order was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; (2) the order restrains the person from harassing, stalking, or threatening an intimate partner; and (3) the order by its terms explicitly prohibits the use, attempted use, or threatened use of physical force. 18 U.S.C. § 922(g)(8).

As previously discussed, the 1994 VPO was issued after Wynne was provided notice and an opportunity to be heard. Wynne does not challenge the sufficiency of the order with respect to the other two requirements. We simply note that these requirements

have merit. The government did not do so.

- 13 -

were satisfied in this case.[7]

Because we find that the 1994 order was in effect at the time Wynne purchased the firearm and satisfied the requirements of § 922(g)(8), we affirm Wynne's conviction and sentence under § 922(g)(8).

2.    *18 U.S.C. § 922(a)(6) – Making a False Statement*

We now turn to Wynne's appeal of his conviction under § 922(a)(6). This statute provides:

> (a) It shall be unlawful –
>
> . . . .
>
> (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a . . . licensed dealer . . . knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

In order for us to find that Wynne's statement on the ATF form – claiming that he was not subject to a VPO – is sufficient to sustain a conviction under § 922(a)(6), we must find that the statement related to a fact material to the lawfulness of the sale. Before we can reach this conclusion, we must determine whether the 1994 VPO was sufficient to render Wynne's possession of a firearm illegal under 18 U.S.C. § 922(g)(8). Otherwise,

---

[7] Regarding the third requirement, language similar to the order in this case was held to be sufficient in *United States v. Bostic*. 168 F.3d 718, 721-22 (4th Cir. 1999).

- 14 -

the sale would have been lawful, and the statement would not have been material to the lawfulness of the sale.

Because we find that Wynne was subject to a 1994 VPO meeting the requirements of 18 U.S.C. § 922(g)(8), we conclude that he made a false statement sufficient to sustain his conviction under 18 U.S.C. § 922(a)(6). The first page of the ATF Form 4473 contains Question No. 9-J, which asks: "Are you subject to a court order restraining you from harassing, stalking, or threatening an imminent partner or child of such partner?" Wynne's response to this question was "No." This is clearly a false statement either "intended or likely to" deceive a firearm dealer with respect to a fact material to the lawfulness of the sale. Thus, Wynne violated § 922(a)(6) when he made this statement. We therefore affirm the district court's conviction and sentence of Wynne for violation of § 922(a)(6).

### E.    *Other Arguments*

#### 1.    *Selective Prosecution*

Federal Rule of Criminal Procedure 12(b)(1) requires that "objections based on defects in the institution of the prosecution" be raised prior to trial. We have previously held that a selective prosecution claim "clearly qualifie[s] as such an objection." *United States v. Bryant*, 5 F.3d 474, 476 (10 Cir. 1993). Under Federal Rule of Criminal Procedure 12(f), "these objections are waived if they are not raised prior to trial." We find no reason in the record to excuse Wynne's failure to raise this issue prior to trial.

Because he failed to show cause for failing to timely raise his selective prosecution claim, the claim is waived.

### 2. *Sixth Amendment Effective Assistance of Counsel*

Wynne also argues that the district court violated his Sixth Amendment right to effective assistance of counsel by failing to allow his counsel to withdraw. Ordinarily, the decision whether to permit substitute counsel is reviewed for an abuse of discretion. *See e.g., United States v. Johnson*, 961 F.2d 1488, 1490 (10th Cir. 1992). Here, however, Wynne claims that the district court's refusal to let his attorney withdraw resulted in ineffective assistance of counsel. Such claims are rarely reviewable on direct appeal. In *United States v. Galloway*, "[w]e reaffirm[ed] and reemphasize[d] the central principle that . . . [i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." 56 F.3d 1239, 1240 (10th Cir. 1995). Appellate review is possible only when no further development of the record is necessary to decide the issue. *Id.* at 1241. Because further development of the record would be necessary to decide whether Wynne's counsel was ineffective in this case, the exception does not apply. Accordingly, we refuse to consider Wynne's claim of ineffective assistance of counsel.

*III. Conclusion*

For the foregoing reasons, we AFFIRM the decision of the district court.

ENTERED FOR THE COURT,

Deanell Reece Tacha
Chief Circuit Judge