UNITED STATES of America,
Plaintiff–Appellant/Cross–
Appellee,

v.

Randee Lee BAYLES, Defendant–
Appellee/Cross–Appellant.

Nos. 01–4092, 01–4097.

United States Court of Appeals,
Tenth Circuit.

Nov. 15, 2002.

See, also, 151 F.Supp.2d 1318.

Brett Tolman, Assistant United States Attorney, (Paul M. Warner, United States Attorney, and Diana Hagen, Assistant United States Attorney, on the briefs), District of Utah, for the Plaintiff–Appellant/Cross–Appellee.

Ronald J. Yengich, (Bradley P. Rich and Vanessa Ramos–Smith, on the briefs), of Yengich, Rich, and Xaiz, Salt Lake City, UT, for the Defendant–Appellee/Cross–Appellant.

Before HENRY, PORFILIO, and ANDERSON, Circuit Judges.

HENRY, Circuit Judge.

Randee Lee Bayles pleaded guilty to possessing a firearm while subject to a domestic violence protective order, in vio-

lation of 18 U.S.C. § 922(g)(8).[1] Because Mr. Bayles was unaware of that statute, the district court granted a seven-level downward departure and imposed a sentence of twenty-four months' probation.

The government now appeals the downward departure. In a cross-appeal, Mr. Bayles argues that his conviction violates the Second Amendment and the Commerce Clause of the United States Constitution. He further contends that the district court made an erroneous factual finding by (1) rejecting his contention that the guns he possessed were used solely for sporting purposes or lawful collection and therefore (2) denying his request for a reduction in the offense level.

We reject Mr. Bayles's challenges to his convictions and sentences. However, as to the government's appeal, we conclude that the district court abused its discretion in granting a downward departure. Because the district court's downward departure is not supported by this record, we vacate Mr. Bayles sentence and remand for re-sentencing.

### BACKGROUND

Mr. Bayles's federal conviction arises out of an August 10, 1999, protective order issued by the District Court for San Juan County, Utah, and affirmed by the Utah Court of Appeals and the Utah Supreme Court. *See Bailey v. Bayles*, 18 P.3d 1129 (Utah Ct.App.2001), *aff'd*, 52 P.3d 1158 (Utah 2002). The order is set forth on a preprinted form that contains standard language. *See* Aplt's App. at 72–76 (Protective Order, dated Aug. 10.1999). The issuing judge initialed particular sections that applied to Mr. Bayles.

The protective order imposes the following conditions on Mr. Bayles: (1) it restrains him from "attempting, committing, or threatening to commit abuse or domestic violence" against his ex-wife (Jeroldene Bailey) or her current husband; (2) it prohibits him from "directly or indirectly contacting, harassing, telephoning, or otherwise communicating with [Ms. Bailey];" and (3) it directs him to stay away from the residence, places of employment, and schools of Ms. Bailey and her family. *See id.* at 72–73.

The protective order also contains a preprinted paragraph that sets forth the following finding: "The Court having found that Respondent's use or possession of a weapon may pose a serious threat of harm to Petitioner, the Respondent is prohibited from purchasing, using, or possessing a firearm and/or the following weapon(s)." *Id.* at 73. That paragraph is *not* initialed

---

**1.** Section 922(g)(8) provides:

It shall be unlawful for any person . . .
who is subject to a court order that—
(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; . . .
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

or checked by the issuing judge, and thus the protective order does not itself impose restrictions on Mr. Bayles's possession of firearms. *See id.*

Following the issuance of the protective order, Mr. Bayles received information from several other sources regarding restrictions on his ownership of firearms. In March 2000, the attorney for Mr. Bayles's ex-wife informed Mr. Bayles' attorney (Matthew Hilton) that "[Mr.] Bayles's possession of firearms while subject to a protective order was a violation of federal law." *See id.* at 106 (affidavit of Rosalie Reilly). In response to Ms. Reilly's communication, Mr. Hilton expressed some doubts about her reading of federal law:

> Prior to the time of the filing of the appeal [of the August 10, 1999 protective order], I discussed the nature of federal firearms law with opposing counsel for Jeroldene Bailey. After reviewing the annotated statutory laws cited by opposing counsel, since there was no criminal conviction, it was not clear to me that [Mr.] Bayles could not possess a firearm when the original temporary order and permanent order did not restrict his possession or ownership of a firearm.

> Based on the foregoing, and knowing of my disagreement with counsel's statement of Utah law regarding stalking, I called Randee Bayles and advised him over the phone of (1) the position of his ex-wife's counsel, *(2) that federal laws may require him to not possess firearms, (3) that out of an abundance of caution I would recommend that he do so,* but (4) not being an expert in criminal law or federal laws of this nature, I was not able to provide a definitive opinion on the matter based on either experience or a more detailed examination of the statutes and related matters.

*Id.* at 129–130 (affidavit of Matthew Hilton) (emphasis added).

In July 2000, an FBI agent received information that Mr. Bayles possessed handguns, shotguns, rifles, sawed-off shotguns, and fully automatic weapons. Based on that information, federal agents began an undercover investigation. On August 9, 2000, Mr. Bayles admitted to an undercover agent that he owned "approximately one hundred rifles and between seventy-five and eighty-five handguns." *Id.* at 12. According to the agent:

> [Mr.] Bayles also admitted that due to an order that his ex-wife had obtained from the courts, he had moved most of his guns to a location away from his house, but that he still had a few guns in his house that he could use for hunting. [Mr.] Bayles also stated that he keeps two handguns in his truck.

> Throughout the meeting, Bayles continued to provide information about firearms and how to use them. Just prior to the conclusion of the meeting, while discussing which types of guns are suitable for hunting [Mr.] Bayles retrieved two loaded handguns fro[m] his Ford truck. [Mr.] Bayles retrieved a Colt, Python .357 magnum revolver and a Beretta 9 mm. pistol.

*Id.*

On August 23, 2000, the agent conducted a second undercover meeting with Mr. Bayles. In response to the agent's queries about obtaining weapons, Mr. Bayles explained that he "got rid of [his] guns . . . [b]ecause of the ex parte [protective order] and stuff. . . ." *Id.* at 223. Mr. Bayles added, "I don't think I'm illegal. My attorney [d]oesn't think I'm illegal but he says that somebody [might] misinterpret[ ] the law and decide[ ] they want to [c]ome after my weapons. . . ." *Id.*

Agents arrested Mr. Bayles shortly after he made that statement. On September 13, 2000, a grand jury returned an indictment charging Mr. Bayles with one count of possessing firearms while subject to a protective order, a violation of 18 U.S.C. § 922(g)(8). The indictment alleged that between August 9 and August 23, 2000, Mr. Bayles possessed nineteen firearms (fifteen rifles, two shotguns, a revolver, and a pistol) and that he did so while subject to the August 10, 1999, protective order.

Mr. Bayles filed a motion to dismiss the indictment on the grounds that § 922(g)(8) violated his constitutional rights. In particular, he argued that the statute deprived him of his Second Amendment right to keep and bear arms and that application of the statute exceeded Congress's power under the Commerce Clause because his possession of the firearms did not substantially affect interstate commerce. After the district court denied his motion to dismiss, *see United States v. Bayles,* 151 F.Supp.2d 1318 (D.Utah 2000), Mr. Bayles pleaded guilty to the indictment on the condition that he could appeal that ruling.

Based on an offense level of fifteen and a criminal history category of I, the presentence report found the Guideline range to be eighteen to twenty-four months. *See* Aplt's Sealed App. at 12, ¶ 42. The report did note the possibility of a downward departure based upon aberrant behavior.

In response, Mr. Bayles argued that the firearms that he possessed were "solely for lawful sporting purposes or collection," *see* USSG 2K2.1(b)(2) and that, as a result, the court should reduce the offense level to six. Mr. Bayles further contended that the district court should depart downward because the state court protective order did not expressly prohibit the possession of firearms.

The district court denied Mr. Bayles's request for a reduction in the offense level based on his alleged use of the weapons for sporting or collection purposes. However, the court ruled in favor of Mr. Bayles on his motion for a downward departure, stating:

> I disagree with the government both on aberrant behavior and on outside the heartland. I think it's a very unusual case where you get bad legal advice and you also—I know at some point he started to know things, but you get bad legal advice. The box isn't checked. It's really an unclear kind of thing. I'm not here to tell State Judges how to do their jobs, but people ought to . . . have every chance to know, as soon as they can, about what they can and can't do. So I think those are somewhat unique circumstances.

Aplt's App. at 252–53. The court added that "this seems to me to meet all the criteria of aberrant behavior to me under 5K2.20 and I also think a departure is warranted under 5K2.0." *Id.* at 253. As a result the court departed downward to an offense level of eight and imposed a sentence of twenty-four months probation, a fine of $1,000, and a special assessment of $100.

## DISCUSSION

Because two of the issues Mr. Bayles raises in his cross-appeal challenge the validity of his conviction, we begin with those contentions. Concluding that Mr. Bayles's § 922(g)(8) conviction is valid, we then proceed to the issues surrounding Mr. Bayles's sentence.

### I. Alleged Second Amendment Violation

Mr. Bayles argues that § 922(g)(8) violates the Second Amendment because it

infringes his right to bear arms. As a result, he maintains that his conviction should be reversed.

■ In order to establish a violation of the right to bear arms under Second Amendment, one must establish the following elements: (1) that he is part of a state militia; (2) the militia, and his participation therein, is "well regulated" by the state; (3) the guns in question are used by that militia; and (4) his possession of the guns was reasonably connected to his militia service. *See United States v. Haney*, 264 F.3d 1161, 1165 (10th Cir.2001). Because Mr. Bayles has failed to offer evidence or argument in support of any of these elements, his Second Amendment challenge lacks merit. *See United States v. Henry*, 288 F.3d 657, 663 (5th Cir.2002) (rejecting Second Amendment challenge to § 922(g)(8)); *United States v. Napier*, 233 F.3d 394, 403–04 (6th Cir.2000) (same); *see also United States v. Baer*, 235 F.3d 561 (10th Cir.2001) (rejecting Second Amendment challenge to § 922(g)(1), which prohibits firearm possession by convicted felons).

We also note that, in advancing his Second Amendment challenge, Mr. Bayles relies primarily on a Texas district court case, *United States v. Emerson*, 46 F.Supp.2d 598, 610 (N.D.Tex.1999). That case held that § 922(g)(8) was overbroad and provided insufficient safeguards against the arbitrary infringement of Second Amendment rights. Unfortunately for Mr. Bayles, the Fifth Circuit reversed the district court's decision in *Emerson* a month after he filed his opening brief in this case. *See United States v. Emerson*, 270 F.3d 203 (5th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 2362, 153 L.Ed.2d 184 (2002). The Fifth Circuit concluded that the prosecution of the defendant for possessing a gun while under a state court protective order did not violate his Second Amendment rights.

## II. Alleged Commerce Clause Violation

■ Invoking *United States v. Lopez*, 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) and *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), Mr. Bayles argues that § 922(g)(8) violates the Commerce Clause. As the government notes, Mr. Bayles's argument is defeated by precedent upholding similar challenges to other subsections of § 922(g). Like § 922(g)(8), these other subsections establish as a jurisdictional element the shipping, transporting, possessing, or receiving of firearms or ammunition in interstate or foreign commerce.

In particular, in *United States v. Dorris*, 236 F.3d 582, 586 (10th Cir.2000), we rejected a similar Commerce Clause challenge to § 922(g)(1), which applies to convicted felons. We distinguished *Lopez* and *Morrison* on the following grounds:

[W]hile *Lopez* and *Morrison* were questions concerning the power of Congress to regulate activities substantially affecting interstate commerce, § 922(g)(1) regulates the possession of goods moved in interstate commerce. The jurisdictional element in § 922(g)(1) puts it into a different category of analysis than the laws considered in *Lopez* and *Morrison*. Section 922(g)(1) by its language only regulates those weapons affecting interstate commerce by being the subject of interstate trade. It addresses items sent in interstate commerce, and the channels of commerce themselves—ordering they be kept clear of firearms.

Moreover, the Fourth Circuit has expressly rejected a Commerce Clause chal-

lenge to the statute at issue here, § 922(g)(8). *See United States v. Bostic,* 168 F.3d 718, 723 (4th Cir.1999) ("Unlike the statute at issue in *Lopez,* Section 922(g) expressly requires the government to prove that the firearm was ship[ped] or transport[ed] in interstate or foreign commerce; was possess[ed] in or affect[ed] commerce; or is received after having been shipped or transported in interstate or foreign commerce.") (quoting § 922(g)). Other circuits have agreed. *See, e.g., Napier,* 233 F.3d at 402 (6th Cir.2000) ("Section 922(g)(8) ... does contain a jurisdictional element that establishes that it was enacted in pursuance of Congress' power to regulate interstate commerce in firearms and ammunition."); *United States v. Jones,* 231 F.3d 508, 514–15 (9th Cir.2000) (noting that "every Court of Appeals that has considered this question has concluded that § 922(g)(8) is a valid exercise of Congress' power under the Commerce Clause"); *United States v. Wilson,* 159 F.3d 280, 286 (7th Cir.1998) (upholding 18 U.S.C. § 922(g)(8) because it "contains a jurisdictional element that brings it within Congress' power under the Commerce Clause").

The reasoning of these decisions is applicable here. Section 922(g)(8) required the prosecution to prove that the weapons possessed by Mr. Bayles were "ship[ped] [or transport[ed]] in interstate or foreign commerce, ... possess[ed] in or affecting commerce ... or receive[d] in interstate or foreign commerce." 18 U.S.C. § 922(g)(8). In his Statement in Advance of a Plea of Guilty, Mr. Bayles stated: *"I agree that the government could establish that the firearms had traveled in interstate commerce."* Aplt's App. at 121 (emphasis added). By pleading guilty to the charged offense, Mr. Bayles has thus admitted the required connection to interstate or foreign commerce.

Accordingly, we conclude that Mr. Bayles's conviction under § 922(g)(8) does not violate the Commerce Clause.

### III. Requested Decrease in the Offense Level pursuant to USSG § 2K2.1(b)(2)

■ As a final argument in his cross-appeal, Mr. Bayles argues that the district court erred in refusing to reduce the offense level pursuant to USSG § 2K2.1(b)(2). Section 2K2.1(b)(2) provides:

> If the defendant .... possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.

The commentary to § 2K2.1(b)(2) directs the sentencing court to consider the following circumstances: the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (*e.g.,* prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law. USSG § 2K2.1(b)(2), cmt. n. 10. We review the district court's factual determination that the firearm was not intended "solely for lawful sporting purposes or collection" for clear error. *See United States v. Archuletta,* 231 F.3d 682, 684 (10th Cir. 2000) (addressing standard review for factual findings at sentencing generally); *see also United States v. Morrison,* 983 F.2d 730, 732 (6th Cir.1993) (reviewing "solely for lawful sporting purposes" reduction for clear error).

Upon review of the record, we agree with the government that the district court

did not clearly err in declining to reduce Mr. Bayles's offense level pursuant to USSG § 2K2.1(b)(2). As the government notes, two of the weapons that Mr. Bayles possessed were handguns. The evidence supports the conclusion that Mr. Bayles did not possess these weapons for sporting or collection purposes. *Cf. Morrison*, 983 F.2d at 732–33 (holding that the sentencing court did not clearly err in concluding that a handgun without a scope, carried in a shoulder holster was not possessed "solely for lawful sporting purposes"). Additionally, the fact that Mr. Bayles carried ammunition with the handguns supports the district court's refusal to apply § 2K2.1(b)(2). *See United States v. Dudley*, 62 F.3d 1275, 1277 (10th Cir.1995) (stating that "the fact that the guns were loaded cuts against the contention that they were *solely* for sporting or collection purposes"); *see also United States v. Halpin*, 139 F.3d 310, 311 (2d Cir.1996) (concluding that firearms kept for personal protection were not used "solely for lawful sporting purposes or collection").

In his appellate brief, Mr. Bayles relies on *United States v. Mojica*, 214 F.3d 1169 (10th Cir.2001). There, the defendant transported one unloaded shotgun and ammunition to his brother. This court held that the sentencing court could consider whether the defendant's possession of the gun was "solely for lawful sporting purposes of others." *Id.* at 1172–73 (internal quotation marks omitted). *Mojica* is thus inapplicable: there is no indication that in possessing the weapons Mr. Bayles was solely furthering the lawful sporting purposes of another person.

Accordingly, we conclude that the district court did not clearly err in refusing to decrease Mr. Bayles's offense level pursuant to USSG § 2K2.1(b)(2).

### ·IV. Downward Departure

The district court departed from the Guideline range on two grounds. First, it concluded that Mr. Bayles's conduct was outside the heartland of § 922(g)(8) offenses. Second, it found that Mr. Bayles's conduct constituted aberrant behavior. In its appeal, the government challenges both grounds for departure.

With regard to the outside-the-heartland rationale, the government contends that: (1) the district court relied on an impermissible departure factor—Mr. Bayles's lack of awareness of § 922(g)(8)'s prohibition of firearm possession following the issuance of the state court protective order and (2) the facts of this case are not unusual enough to remove it from the heartland of § 922(g)(8) offenses.[2]

With regard to the aberrant behavior rationale, the government acknowledges that, in an appropriate case, aberrant behavior may support a downward departure. *See* USSG § 5K2.20 (stating that "a sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior"). However, the government contends that the record here does not provide a factual basis for departure on this ground.

■ Pursuant to the Supreme Court's decision in *Koon v. United States*, 518 U.S.

---

**2.** As to the outside-the-heartland rationale for downward departure, the government also argues that: (3) the district court clearly erred in finding as a matter of fact that Mr. Bayles was unaware of § 922(g)(8) and (4) the degree of departure granted by the district court

(a seven-level decrease in the offense level) was not reasonable. Because of our resolution of the government's first two challenges to the outside-the heartland departure, we do not address these additional arguments.

81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), we need not defer to the district court's resolution of the first issue raised by the government—whether Mr. Bayles's lack of knowledge of § 922(g)(8) constituted a permissible departure factor. That issue concerns the legal question as to the proper interpretation of the Guidelines. *See Koon*, 518 U.S. at 90, 116 S.Ct. 2035; *United States v. Collins*, 122 F.3d 1297, 1302–03 (10th Cir.1997).

■ However, with regard to the second issue raised by the government—whether the facts of Mr. Bayles's case are unusual enough to remove it from the heartland of § 922(g)(8) offenses, we "must give 'substantial deference' to the district court's resolution." *Id.* (citing *United States v. Rivera*, 994 F.2d 942, 951 (1st Cir.1993)). That deference is based on the fact that "the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing ... [and that] [d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do." *Koon*, 518 U.S. at 98, 116 S.Ct. 2035.

Finally, as to the government's challenge to departure on the grounds of aberrant behavior, we examine the district court's factual determinations for clear error. *See Collins*, 122 F.3d at 1303 (citing *United States v. White*, 893 F.2d 276 (10th Cir.1990) and *United States v. Maldonado–Campos*, 920 F.2d 714, 719–20 (10th Cir.1990)).

### A. Conduct Outside the Heartland

■ The government's challenge to the first ground for departure requires us to apply the concept of a "heartland"—the "set of typical cases embodying the conduct ... describe[d]." U.S.S.G. ch. 1, pt. A, subpt. 4(b). In certain instances when "the defendant's conduct significantly differs from the norm" and is therefore "outside the heartland," *see id.*, the sentencing court may depart from the range of sentences set forth in the Guidelines. *Id.; see United States v. Sicken*, 223 F.3d 1169, 1172 (10th Cir.2000) (discussing departure on the grounds of conduct outside the heartland).

Whether departure is proper depends upon the factors on which the sentencing court relies. Under the Guidelines, certain factors are encouraged as grounds for departure while other factors are discouraged and still others are simply not mentioned in the Guidelines at all. Under *Koon*, "[i]f a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland." *Koon*, 518 U.S. at 93, 116 S.Ct. 2035.

Here, the government maintains that this inquiry establishes that, as a general rule, a defendant's lack of awareness of the restrictions on firearm possession set forth in § 922(g)(8) is *not* sufficient to remove a defendant's conduct from the heartland. The government also contends that, regardless of the general rule, the evidence in this particular record as to Mr. Bayles's alleged lack of awareness is insufficient to warrant departure.

In analyzing the government's arguments we first consider the Guideline provision at issue: USSG § 2K2.1. Section 2K2.1 applies generally to "Unlawful Receipt, Possession, or Transportation of

Firearms or Ammunition." Section 2K2.1 assigns offense levels to firearms offenses based on a variety of factors, including the defendant's prior felony convictions, the kinds of firearms involved, the number of firearms involved, and how the firearm was used. As noted above, § 2K2.1 also provides for a decrease in the offense level if the defendant "possessed all ammunition and firearms solely for lawful sporting purposes or collection and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition." USSG § 2K2.1(b)(2). However, § 2K2.1 does *not* expressly address the defendant's awareness that the possession of the firearm was illegal. *See United States v. Jones,* 158 F.3d 492, 501 (10th Cir.1998) (discussing the guideline provisions pertaining to § 922(g)(8) offenses and noting that "[l]ack of notice is not addressed specifically by the Sentencing Guidelines").

In *Jones,* 158 F.3d at 501–02, we addressed the argument that a defendant's lack of notice of § 922(g)(8) warranted a downward departure pursuant to USSG § 2K2.1. Noting the reduction of the offense level when the firearm was used for lawful sporting purposes, as well as the increase in the offense level if firearm was used in another felony, we concluded: "[Section 2K2.1] *clearly intended to punish innocent possession and use of a firearm less severely and improper use more severely." Id.* at 501 (emphasis added).

Applying that distinction between "innocent possession" and "improper use," *id.,* we held in *Jones* that the defendant's possession was not innocent. We noted that the defendant had been accused of violating a restraining order by approaching his estranged wife's home while carrying a handgun, that the defendant was arrested while in possession of his own handgun, and that he had been convicted in state court of negligent use of a deadly weapon. Accordingly, we concluded that even though the sentencing court had specifically found that the defendant "lacked notice of the criminality of his conduct and was unaware that [possession of a firearm] was an offense," *id.* (internal quotation marks omitted), this lack of notice was not a permissible basis for downward departure.

In the instant case, *Jones* directly supports the government's initial contention in its appeal: the mere fact that Mr. Bayles was unaware that § 922(g)(8) prohibited his possession of firearms after the issuance of the protective order does not remove his conduct from the heartland of § 922(g)(8) offenses under the Guidelines. Under *Jones,* more than ignorance of the statute is required to warrant a downward departure.

That conclusion is also supported by case law construing § 922(g)(8). As the government observes, this circuit, along with every other one that has considered the issue, has concluded that a defendant may be convicted of violating § 922(g)(8) even though he or she did not know that the statute prohibited the possession of a firearm after the issuance of a protective order. *See United States v. Reddick,* 203 F.3d 767, 770 (10th Cir.2000) ("We agree with every circuit court that has considered due process challenges to § 922(g)(8) and conclude that due process does not require actual knowledge of the federal statute.").[3]

Although these decisions do not directly address the question of downward depar-

---

**3.** *See also Napier,* 233 F.3d at 399 (finding "no basis for requiring actual notice of the gun prohibition" in order to support a convic-

tion under § 922(g)(8) and reasoning that "[the defendant's] status alone, as one subject to a domestic violence order, was sufficient to

ture, they do indicate that there is a broad class of defendants convicted of violating § 922(g)(8) who, like Mr. Bayles, have asserted that they were unaware that the statute rendered their possession of firearms unlawful. *See Wilson* (Posner, J., dissenting) (discussing the large number of persons subject to protective orders who also owned guns and who were probably unaware of § 922(g)(8)'s provisions). These decisions thus suggest that the defendant's lack of awareness of the statute does not establish that his or her conduct falls outside the range of typical conduct of those defendants convicted under § 922(g)(8).

The Eighth Circuit's decision in *United States v. Hutzell,* 217 F.3d 966, 969 (8th Cir.2000) also supports this view. There,

in affirming the district court's denial of a request for downward departure based upon the defendant's lack of knowledge of a related statute (§ 922(g)(9)), the court referred to the case as "entirely run-of-the-mill." [4] *Id.* at 969. Despite the defendant's contention that he lacked knowledge that his possession of a firearm violated federal law, the court concluded: "Nothing about the circumstances of [the defendant's] offense afforded him less notice than any other offender would have had with respect to the lawfulness of the conduct in question. [The defendant's] conduct is by definition, therefore, not outside the heartland of such offenses." *Id.*

In the instant case, the district court found that Mr. Bayles's ignorance of § 922(g)(8)'s prohibition of firearm posses-

---

preclude him from claiming a lack of fair warning"); *United States v. Kafka,* 222 F.3d 1129, 1131–33 (9th Cir.2000) (rejecting argument that the government must establish that the defendant knew that § 922(g)(8) rendered firearm possession illegal and reasoning that "the issuance of the [protective] order itself should have alerted [the defendant] to the possibility of other limitations on his conduct, including the prohibition on his possession of firearms, especially when one acknowledges that the firearm is the ultimate instrument to accomplish the acts which the restraining order specifically prohibited"); *United States v. Meade,* 175 F.3d 215, 225–26 (1st Cir.1999) (rejecting argument that the government must establish that the defendant knew that § 922(g)(8) rendered firearm possession illegal and reasoning that "[t]he dangerous propensities of persons with a history of domestic abuse are no secret, and ... a person who is subject to such an order would not be sanguine about the legal consequences of possessing a firearm"); *United States v. Bostic,* 168 F.3d 718, 723 (4th Cir.1999) (concluding that because the defendant knew that he possessed a firearm and that he was subject to a protective order that had found that he represented a physical threat to a third party, "due process does not entitle [the defendant] to notice that his conduct was illegal"); *United States v. Wilson,* 159 F.3d 280, 289 (7th Cir.

1998) (stating that "[the defendant's] lack of knowledge of the existence of [§ 922(g)(8)] is therefore immaterial and his due process rights were not violated in this case"). *But see Wilson,* 159 F.3d at 293–96 (Posner, J., dissenting) (concluding that the government must prove that the defendant knew that § 922(g)(8) prohibited possession of a firearm in order to obtain a conviction and reasoning that the statute "is not the kind of law that a lay person would intuit existed because the conduct it forbade was contrary to the moral code of his society," that "the Department of Justice took no steps to publicize the existence of [§ 922(g)(8)] until long after [the defendant] violated it, even to the extent of advising the state judiciaries of it so that judges could warn defendants in domestic relations disputes" and that "this is the classic case of an unwarned defendant"); *United States v. Hutzell,* 217 F.3d 966, 969–983 (8th Cir.2000) (Bennett, J., dissenting) (concluding that "due process requires that the government prove that the defendant knew or should have known of the requirements of § 922(g)(9)").

4. Section 922(g)(9) makes it unlawful for anyone "who has been convicted of a misdemeanor crime of domestic violence ... to possess ... any firearm."

sion justified a downward departure. The court pointed to both the state court protective order's failure to cite the federal statute and Mr. Bayles's attorney's professed ignorance of the requirements of federal law, concluding that, at the time he possessed the firearms in question, Mr. Bayles did not know "what [he] c[ould] and c[ould]n't do." Aplt's App. at 253. In light of the provisions of USSG § 2K2.1, *Jones*, circuit decisions construing § 922(g)(8), and the Eighth Circuit's decision in *Hutzell*, we conclude that the district court erred: a defendant's ignorance of § 922(g)(8) does not remove his or her conduct from the heartland and is therefore not a permissible basis for departure.

■ In so concluding, we do not foreclose the possibility that, in a given case, a defendant's ignorance of the prohibition set forth in the statute, combined with additional circumstances demonstrating that the defendant was actually misled into reasonably believing that the possession of firearms was lawful as a matter of federal law, might remove the case from the heartland. For example, if a state court judge actually (but mistakenly) informed a defendant that federal law did not bar the possession of firearms following the issuance of a protective order, or if the defendant's lawyer made such a statement, then a downward departure might be warranted. In such circumstances, the defendant's possession of the firearm might constitute the kind of "innocent possession" to which we referred in *Jones*.

In this case, however, the record establishes no such circumstances. Although the state court order did not state that Mr. Bayles could not possess a firearm, the order also did not purport to inform Mr. Bayles of the requirements of *federal* law. Instead, the state court order merely recited the restrictions imposed by the state court judge himself. Similarly, Mr. Bayles's attorney did not inform his client that federal law allowed him to possess firearms following the issuance of the protective order. Instead, Mr. Bayles's attorney stated that he was unsure of the requirements of federal law but that "federal laws may require him to not possess firearms" and that "out of an abundance of caution [he] would recommend [Mr. Bayles] do so." Aplt's App. at 129–130. Apparently, Mr. Bayles chose not to exercise the recommended caution. However, that fact does not establish that he was actually misled about § 922(g)(8) by the state court judge or by his lawyer.

Moreover, as the government observes, there is additional evidence in this record indicating that Mr. Bayles's possession of the firearms was not "innocent" under *Jones*. In particular, Mr Bayles informed an undercover agent that he had moved many of his firearms as a result of the state court protective order. That fact undermines his assertion that he was entirely unaware of federal restrictions on the possession of firearms.

Accordingly, we further conclude that the district court erred in concluding that the particular factual circumstances of this case—the provisions of the state court order and the advice of Mr. Bayles's lawyer—removed Mr. Bayles's conduct from the heartland. *See Collins*, 122 F.3d at 1303. In light of the district court's error, the case must be remanded for resentencing in accordance with this opinion.

### B. Aberrant Behavior

■ The government also argues that the district court erred in departing downward on the grounds that Mr. Bayles had

engaged in aberrant behavior. We agree with the government on this issue as well.

Section 5K2.20 of the Sentencing Guidelines provides that a "sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior." The application notes to USSG § 5K2.20 define "aberrant behavior" as "a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." *See* USSG § 5K2.20 cmt. n.1. We have characterized the application of the aberrant behavior ground for departure as a largely factual question on which we afford substantial deference to the sentencing court under the *Koon* abuse of discretion standard. *United States v. Constantine*, 263 F.3d 1122, 1127 (10th Cir.2001). However, in certain instances, the application of this provision may involve an interpretation of the language of the Guidelines, a matter that we examine de novo. *Id.*

Here, upon review of the record, we agree with the government that the district court abused its discretion in applying the aberrant behavior provision of the Guidelines to justify a downward departure. Most importantly, although the district court stated that it "disagree[d] with the government . . . on aberrant behavior," Aplt's App. at 253, the court made no specific factual findings on the relevant factors necessary to establish aberrant behavior. *See* 18 U.S.C. § 3553(c)(2) (stating that if a sentence is outside the guideline range, the court must state the specific reason for the imposition of the sentence); *United States v. Flinn*, 987 F.2d 1497, 1501–02 (10th Cir.1993) ("The district

court's proffered justifications must with specificity state reasons for the imposition of the particular sentence chosen when it is outside the range.").

Moreover, as the government notes, the evidence in the record provides little support for the contention that the instant offense was committed without significant planning, was of limited duration; and represented "a marked deviation by the defendant from an otherwise law-abiding life." *See* USSG § 5K2.20 cmt. n. 1. In particular, Mr. Bayles's statement to the undercover agent that he possessed one hundred rifles and seventy-five to eighty-five handguns and that he had moved most of these weapons as a result of the state court protective order suggests the kind of calculated response inconsistent with a finding of aberrant behavior. As to the duration of the offense, the record indicates that, following the issuance of the state court protective order in August 1999, Mr. Bayles continued to possess a large number of firearms until his arrest in August 2000. Finally, there is little indication that this offense constituted a marked deviation from an otherwise law-abiding life. The state court found that Mr. Bayles had continued to harass his ex-wife. Even though Mr. Bayles's only criminal conviction prior to the instant case was a misdemeanor contempt charge for violating the terms of an ex parte protective order, this court has held that "the factors supporting an aberrant behavior departure must involve something other than an act which is merely a first offense . . . [T]he permissible factors must illustrate some unique circumstances— some element of abnormal or exceptional behavior—beside the fact that the defendant has never before committed a crime." *United States v. Benally*, 215 F.3d 1068, 1074 (10th Cir.2000).

Accordingly, we conclude that the district court also abused its discretion in

concluding that Mr. Bayles was entitled to a downward departure based upon aberrant behavior.

### III. CONCLUSION

For the reasons set forth below, we AFFIRM Mr. Bayles's conviction for violating 18 U.S.C. § 922(g)(8). However, we further conclude that, although the district court did not clearly err in refusing to decrease Mr. Bayles's offense level pursuant to USSG § 2K2.1(b)(2), the district court did abuse its discretion in departing downward on the grounds that Mr. Bayles's conduct fell outside the heartland for § 922(g)(8) convictions and on the grounds that Mr. Bayles had engaged in aberrant behavior. Accordingly, we VACATE Mr. Bayles's sentence and REMAND the case for resentencing consistent with this opinion.