FILED
United States Court of Appeals
Tenth Circuit

January 15, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SCOTT KIMBALL,

Defendant - Appellant.

No. 09-1245
(D. Colorado)
(D.C. No. 1:07-CR-00249-MSK-1)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## I. INTRODUCTION

Defendant-appellant Scott Kimball pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Kimball to seventy months' imprisonment and three years' supervised release. Kimball appeals, arguing the district court erred when it found he did not qualify for a reduction in his total offense level under the so-called "sporting exception" contained in § 2K2.1(b)(2) of the United States Sentencing Guidelines ("USSG"). Exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we **affirm** Kimball's sentence.

## II. BACKGROUND

Kimball is a convicted felon who is prohibited from possessing a firearm. *See* 18 U.S.C. § 922(g)(1). On December 28, 2005, Kimball and his girlfriend Melissa Anderson went to a Wal-Mart store in Colorado. At Kimball's direction, Anderson purchased a Winchester rifle with a scope. Kimball paid cash for the firearm. Kimball told Anderson he would teach her to hunt with the rifle, but after the purchase Kimball put the rifle in his vehicle and Anderson never saw it again.

In 2007, the rifle purchased by Anderson and a .40 caliber Smith & Wesson pistol were given to the FBI by William Bender. Bender received the firearms from Kimball's brother, Brett Kimball. At the sentencing hearing, Denise Pierce testified that while Kimball was being pursued by police he called her and told

her to give the handgun to a man named Brett Gamblin. Pierce gave the handgun to Gamblin's girlfriend who gave it to Gamblin. Gamblin subsequently gave the handgun to Brett Kimball.

In a written plea agreement, Kimball admitted unlawfully possessing the rifle. Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared. Kimball filed written objections to the PSR, asserting, *inter alia*, that a base offense level of six applied because he possessed the rifle solely for lawful sporting purposes. *See* USSG § 2K2.1(b)(2) ("If the defendant . . . possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6."). The district court held a sentencing hearing at which numerous witnesses testified, including Kimball.

Kimball testified he was in the cattle business and obtained the rifle to hunt coyotes that were preying on his cattle. Kimball admitted he took the rifle to California for "safety purposes" the month after Anderson purchased it. Kimball denied owning or possessing the .40 caliber handgun. Kimball's brother, Brett Kimball, identified the rifle and the handgun from a photograph. Brett testified he received the handgun from Brett Gamblin who received it from Denise Pierce. The rifle was found in a storage area of a warehouse associated with Brett's business. Brett testified that Kimball, Brett Gamblin, and Michael Bender all had

access to the warehouse. The rifle and the handgun were given to Bender to put in his gun safe. Brett also testified that some time after late 2002, he was visiting Kimball in Colorado and observed a pistol in Kimball's Jeep. When asked, Kimball told Brett the FBI gave him the gun "for protection." Brett admitted he could not be certain whether the gun he saw in Kimball's Jeep was an air gun or a real handgun or whether it was the handgun recovered by the FBI.

Denise Pierce also testified at the sentencing hearing. She met Kimball in 2005 and he lived in her home with her in early 2006. Pierce recalled seeing a rifle case in the back of Kimball's truck and a handgun case in her bedroom closet. Pierce testified she also saw the handgun in the center console of Kimball's truck. In 2006, Kimball and Pierce both used the handgun for target shooting during a trip to Bryce Canyon, Utah. Pierce testified she was certain the handgun was not an air pistol because she loaded the clip with bullets and picked up the empty casings. Pierce identified the handgun given to the FBI by Michael Bender as the handgun she and Kimball used for target shooting.

The Government also presented the testimony of William Walker, who did some work on Kimball's property in 2004. Walker testified he saw Kimball wearing a holster that contained a handgun. According to Walker, he also saw a .38 revolver laying on the front seat of Kimball's vehicle. Walker testified Kimball told him he was an FBI agent.

Kimball's counsel cross-examined each of the Government's witnesses, attempting to expose any biases against Kimball. In addition, Kimball testified again at the end of the sentencing hearing. He denied wearing a holster or possessing a .38 revolver and characterized Walker's testimony to the contrary as an "absolute lie." Kimball disputed Pierce's testimony that he kept a handgun in the bedroom closet, calling it "not true," and further stated her testimony that he possessed a pistol was "absolutely not true." Kimball testified that the pistol Brett Kimball saw in his Jeep was an air pistol.

The district court concluded Kimball failed to establish his eligibility for the § 2K2.1(b)(2) sporting exception because his testimony was "incredible." The court stated Kimball testified falsely "by claiming the applicability of the sporting purpose adjustment and denying relevant conduct concerning possession and use of other firearms, notably the handgun." Based on Kimball's false testimony, the district court applied a two-level enhancement for obstruction of justice, USSG § 3C1.1, and refused to reduce Kimball's offense level under § 3E1.1 for acceptance of responsibility. Based on Kimball's Criminal History Category VI and an adjusted base offense level of sixteen, the district court calculated the advisory guidelines range as forty-six to fifty-seven months. The court, however, varied upward from the advisory range and sentenced Kimball to seventy months' imprisonment followed by a three-year term of supervised release. Kimball filed

a timely notice of appeal, challenging only the denial of the § 2K2.1(b)(2) sporting exception.

## III. DISCUSSION

USSG § 2K2.1(b)(2) states in relevant part:

If the defendant . . . possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level . . . to level 6.

This court reviews for clear error the district court's finding that Kimball did not intend to use the rifle solely for sporting purposes. *United States v. Bayles*, 310 F.3d 1302, 1308 (10th Cir. 2002). The defendant bears the burden of demonstrating that § 2K2.1(b)(2) applies. *United States v. Collins*, 313 F.3d 1251, 1254 (10th Cir. 2002). The application notes to § 2K2.1(b)(2) state that whether firearms are possessed for "lawful sporting purposes or collection" is "determined by the surrounding circumstances" which include "the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law." USSG. § 2K2.1(b)(2), cmt. n.6. The district court's finding that Kimball did not intend to use the rifle solely for sporting purposes was based on the foregoing factors and its determination that

Kimball was not a credible witness. Having reviewed the record, we conclude the district court's finding is not clearly erroneous.

As to the district court's credibility determinations, this court does not "review the credibility of a witness' testimony on appeal." *United States v. Martin*, 163 F.3d 1212, 1217 (10th Cir. 1998). Thus, we will not question the district court's conclusion that Kimball testified falsely when he (1) stated he purchased the rifle solely for hunting and (2) told the court Pierce and Walker were lying when they testified he possessed a handgun. The court supported its credibility finding by noting Kimball is intelligent and articulate but "also deceitful and deceptive." As the district court stated, nine of Kimball's ten previous felony convictions involved false statements or deceit. The court also referenced the false statements Kimball made to Brett Kimball and William Walker when the two men asked Kimball about a handgun in his possession. Kimball falsely told them he was working for the FBI. Finally, the district court noted that the offense of conviction itself was "premised upon deception"—the rifle was purchased by Melissa Anderson but Kimball immediately took possession of it and Anderson never saw it again.

The court's ruling that Kimball failed to meet his burden of proving he intended to use the rifle solely for hunting purposes is also amply supported by the record. Although Kimball testified he obtained the rifle to protect his cattle from coyotes, the Government presented evidence the cattle were moved to a

different location before Kimball acquired the rifle.  There was also testimony that Kimball left Colorado, taking the rifle with him, less than a month after he took possession of it.

## IV.   CONCLUSION

The district court did not err when it declined to reduce Kimball's offense level pursuant to § 2K2.1(b)(2).  Accordingly, we **affirm** the sentence imposed by the district court.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge