**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 30 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 99-4131

EFREN RIOS MOJICA,

Defendant-Appellant.

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## (D.C. No. 98-CR-596-W)

Submitted on the briefs:

Paul M. Warner, United States Attorney, and Barbara Bearnson, Assistant United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.

Robert L. Booker and Edward W. McBride, Jr., of Booker & Associates, Salt Lake City, Utah, for Defendant-Appellant.

Before **KELLY**, **McKAY**, and **HENRY**, Circuit Judges.

**McKAY**, Circuit Judge.

Efren Rios Mojica appeals from a twenty-seven month sentence imposed for violation of 18 U.S.C. § 922(g)(9). He contends that the court erred in holding as a matter of law that § 2K2.1(b)(2) of the United States Sentencing Guidelines Manual [hereinafter "U.S.S.G."] does not apply to his crime. Our jurisdiction arises under 28 U.S.C. § 1291, and we reverse. [1]

BACKGROUND

Although the government contested Mr. Mojica's version of the circumstances surrounding his conviction, the district court assumed the facts submitted by Mr. Mojica to be true in arriving at its challenged legal conclusion. *See* R. Vol. II (Tr. of June 21, 1999 sentencing hr'g at 4-6, 15 [hereinafter "Tr."]). Therefore, the underlying factual predicates for Mr. Mojica's sentence are undisputed for purposes of our review. Mr. Mojica was convicted of several crimes associated with a domestic violence charge in the Utah state courts in February 1998. After those convictions, he lived with Robert and Naomi Rios, his brother and niece. In October 1998, Mr. Rios brought home a shotgun he had borrowed to go turkey hunting. On November 1, 1998, Mr. Mojica had an argument with Ms. Rios. In anger, she threatened to turn him in to the police for

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

violation of probation in the domestic violence case because the shotgun was in the house. Mr. Rios was not at home, so Mr. Mojica decided to immediately return the gun to its owner, whom he knew. The police arrested Mr. Mojica in the parking lot of his apartment complex while he was carrying the unloaded shotgun and fifteen rounds of ammunition in the carrying case.

## APPLICABLE LAW

In September 1996, § 922(g) was amended to make individuals who had committed certain misdemeanor crimes of domestic violence subject to the restrictions on possession of firearms provided in the Gun Control Act of 1968. *See* Omnibus Appropriations Act, Pub. L. No. 104-208, 1996 U.S.S.C.A.N. (110 Stat.) 3009-371 to 3009-372. Mr. Mojica pleaded guilty to possession of a firearm by a restricted person under § 922(g)(9). The applicable Sentencing Guidelines were amended effective November 1, 1998, to include this new class of prohibited persons. *See* U.S.S.G. Supp. to App. C, Amend. 578; U.S.S.G. § 2K2.1, comment. (n.6) (defining "prohibited person" as including those defendants convicted in any court of a misdemeanor domestic violence crime). Mr. Mojica was sentenced at base offense level 12 pursuant to a two-point reduction for acceptance of responsibility. *See* U.S.S.G. § 2K2.1(a)(6) (providing for application of base level offense 14 for defendant who is a "prohibited person"). The court denied Mr. Mojica's request to apply § 2K2.1(b)(2), which

provides for a reduction to base offense level 6 in those situations in which the crime of possession is associated solely with lawful sporting or collection purposes. We review the district court's interpretation and application of the Sentencing Guidelines *de novo*. *See United States v. Henry*, 164 F.3d 1304, 1310 (10th Cir.), *cert. denied*, 119 S. Ct. 2381 (1999).

## DISCUSSION

Section 2K2.1(b)(2) provides:

> If the defendant . . . possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.

Mr. Mojica argued unsuccessfully that he was entitled to a reduction in base offense level because the shotgun was obtained solely for lawful hunting purposes and he had not used the shotgun in any other manner or for any other purpose. The district court noted that there was no claim "that the defendant personally and independent of his brother had any interest in using the gun for sporting purposes, [and] that the sole intent of the defendant in returning the gun was simply to transport the gun out of the house and over to [its owner] . . . because of the threats of his niece . . . ." Tr. at 6. Because Mr. Mojica "personally was not going to use the gun either for sporting or collection purposes," the court

determined as a matter of law that Mr. Mojica was not entitled to the reduction in sentence provided by § 2K2.1(b)(2). *Id.* at 7.

The district court thus limited application of the statutory reduction to those situations in which the defendant possesses the firearm only for his *own* lawful sporting or collection purposes by inserting "defendant's" before "lawful sporting or collection purposes" in the guideline. The narrow question before this court is whether, under the facts that: (1) Mr. Mojica's constructive possession began with his brother obtaining and using the shotgun for lawful sporting purposes; (2) Mr. Mojica never used or intended to use the shotgun for any purpose; and (3) Mr. Mojica's only actual possession of the firearm was in attempting to take it back to its owner, may the court review the totality of the circumstances in determining whether to apply § 2K2.1(b)(2), or is the court barred from applying § 2K2.1(b)(2) by the sole fact that Mr. Mojica never intended to use the shotgun for sporting purposes.

The guidelines, as criminal statutes, are "given their fair meaning in accord with the manifest intent of the lawmakers," *United States v. Moore*, 423 U.S. 122, 145 (1975) (quotation omitted), without adding or subtracting words from the statutory language, *see 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596 (1951). We first observe that the language of § 2K2.1(b)(2) does not expressly limit reduction of a defendant's

-5-

base level offense to those situations in which possession or transport is related only to the defendant's own lawful sporting purposes. Therefore, we endeavor to determine the Sentencing Commission's manifest intent in promulgating the guideline.

The intent of the Sentencing Commission is demonstrated in part through its commentary. District courts are obliged to follow the explanatory application notes unless they are plainly erroneous, inconsistent with the guidelines, or violative of the Constitution or a federal statute. *See Stinson v. United States*, 508 U.S. 36, 42-43 (1993). The relevant application note provides that

> "lawful sporting purposes or collection" [are] determined by the surrounding circumstances. . . . Relevant surrounding circumstances include the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history . . . and the extent to which possession was restricted by local law.

U.S.S.G. § 2K2.1, comment. (n.10). Although this note does not clarify whose sporting purpose is relevant to the inquiry, it also does not expressly require that the defendant have transported or possessed the firearm for his own sporting purposes. It also does not limit "[r]elevant surrounding circumstances" to only those facts involving the defendant. Instead, the application note requires the court to examine the totality of the surrounding circumstances, including the specific circumstances of possession and actual use, rather than relying on a single factor to preclude application of the guideline.

-6-

The purpose of the "specific offense characteristics" guidelines in § 2K2.1(b) is to make punishment proportional to the specific illegal conduct of a particular defendant, i.e. to punish more benign behavior less drastically on the basis of the defendant's "real offense elements" or actual conduct as opposed to only the "charged offense elements." *See* U.S.S.G. Ch. 1, Pt. A (introduction and general application principles). The background notes contained in earlier versions of this particular guideline explained that, before the guidelines were codified, sentencing variations for gun possession crimes were attributable to the wide variety of circumstances under which the offenses occurred, and that, "[a]part from the nature of the defendant's criminal history, his actual or intended use of the firearm was probably the most important factor in determining the sentence." U.S.S.G. § 2K2.1, comment. (backg'd) (1990). As the Eleventh Circuit has noted, "[t]his background note shows that the Sentencing Commission recognized that there are a wide variety of circumstances under which the instant offense may occur and considered the mitigating circumstances of intended lawful use in formulating the Guidelines." *United States v. Godfrey*, 22 F.3d 1048, 1055 n.8 (11th Cir. 1994).

In providing for adjustments based on the specific offense characteristics, the Commission acted consistently with the principle that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider

every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Thus, "the relevant guideline clearly intended to punish innocent possession and use of a firearm less severely, and improper use more severely." *United States v. Jones*, 158 F.3d 492, 501 (10th Cir. 1998). We do not translate this broad purpose to mean, however, that § 2K2.1(b)(2) is a "catchall" guideline applicable to all innocent purposes for possessing a firearm. Clearly, in order to fall within the scope of the guideline, the defendant's possession must be related to or associated with "lawful sporting purposes or collection."

Under the facts assumed by the district court, Mr. Mojica established that the shotgun was obtained and used solely for lawful sporting purposes by his brother but that he obviously had access to the shotgun. *See United States v. Adkins*, 196 F.3d 1112, 1117-18 (10th Cir. 1999) (stating that convictions under §922(g) may be for either actual or constructive possession of a firearm and that constructive possession exists when the defendant knowingly has control over an object and the premises where the object is found), *cert. denied*, 120 S. Ct. 1446 (2000). His acquisition of the shotgun through constructive possession, therefore, was solely for lawful sporting purposes. He established that he did not use the unloaded and cased shotgun in a manner inconsistent with those lawful

sporting purposes during his limited actual possession. He thus showed that his continued possession while transporting the shotgun from his brother's house to the owner's house was "solely for lawful sporting purposes" of others. Under these assumed facts, Mr. Mojica's possession of the firearm constituted a benign act associated with a lawful sporting purpose meriting consideration of application of § 2K2.1(b)(2).

Our holding is consistent with *United States v. Moit*, 100 F.3d 605 (8th Cir. 1996), which the district court rejected. In *Moit* the Eighth Circuit held that a defendant convicted under § 922 who kept his father's gun collection at the defendant's house should have received the § 2K2.1(b)(2) reduction even though he was not the collector and the guns were not found in locations consistent with collection purposes. *See id.* at 605-06. It expressly rejected the government's argument that "one who possesses a gun collection owned by another can never receive a section 2K2.1(b)(2) decrease." *Id.* at 606. In opining that the *Moit* opinion was erroneous, the district court stated that the sporting purpose of one person could not transfer to a prohibited person and thus "insulate" the prohibited person from guilt. The district court reasoned that § 2K2.1(b)(2) "is an absolute provision that if you have been convicted of these crimes, you can't possess that gun for any reason except . . . sporting and collection purposes . . . ." Tr. at 8-9.

In so concluding, we believe the court may have confused consideration of surrounding circumstances related to lawful sporting purposes as a defense to conviction under § 922(g)(9), which is not permitted, and consideration of those surrounding circumstances as mitigating factors in determining the appropriate sentence, which is mandated. Under the application notes, the facts of actual ownership, possession and use solely for lawful sporting purposes, and the purpose of Mr. Mojica's limited possession and intent behind transporting the shotgun are all proper considerations of "relevant surrounding circumstances." U.S.S.G. § 2K2.1, comment. (n.10); *cf. United States v. Prator*, 939 F.2d 844, 846 (9th Cir. 1991) (holding, under prior version of § 2K2.1(b)(2), that intended lawful use is a mitigating factor under this section even if it is irrelevant to the illegal possession itself). Thus, the fact that Mr. Mojica transported a shotgun lawfully used by his brother and its owner solely for sporting purposes did not "insulate" him from criminal liability for illegal possession, but we hold that it is a mitigating factor in determining a fair and proper sentence under the appropriate sentencing guidelines. [2]

---

[2] The government cites two Tenth Circuit unpublished orders and judgments that it argues are similar to the case at bar and in which it argues we "strictly construed" § 2K2.1(b)(2) to limit its application. Both cases are distinguishable. In *United States v. Tregeagle*, No. 91-4080, 1992 WL 33253 (10th Cir. Feb. 18, 1992), the defendant presented no facts showing that the handgun he illegally possessed and pawned was ever acquired or possessed by anyone for lawful

(continued...)

The district court's reading of the guideline preliminarily requires proof that any possession--constructive or actual--is for a defendant's *own* sporting or collection purposes in order to fall within the ambit of the guideline. Even if we concluded that this interpretation was a reasonable one, we conclude that it is also reasonable to interpret this guideline as allowing for a reduction in base level offense for the benign possession of a firearm used solely for another's sporting or collection purposes. Thus, we are at least faced with a facially ambiguous guideline. *See United States v. Wilson*, 10 F.3d 734, 736 (10th Cir. 1993) (stating that rule of lenity is applicable when, in interpreting a facially ambiguous

---

[2](...continued)
sporting or collection purposes, which is a core requirement under the guideline. We refused to apply the rule of lenity to make the guideline applicable to all innocent uses of a handgun because the language limiting its application to "lawful sporting or collection purposes" is not ambiguous. *See id.* at **1. We stated that the defendant's unique circumstances could have been dealt with instead by a downward departure. *See id.* at **2. In *United States v. Austin*, No. 90-2098, 1991 WL 172653 (10th Cir. Sept. 4, 1991), even though the defendant argued that he was simply transporting a sawed-off shotgun and five other firearms to his brother for his brother's collection, the district court held that it did not make any difference whether the sawed-off shotgun belonged to the brother or to defendant because the court did not believe defendant's claim that the shotgun was intended for use as a sporting weapon or any other legitimate use as collection. *See id.* at **2. We upheld the court's *factual finding* that defendant's possession of the shotgun was not associated with a sporting or collection purpose as not clearly erroneous. *See id.* Contrary to the government's argument, we made no comment limiting application of the guideline under the circumstances. *Austin* exemplifies proper consideration of the totality of the circumstances when determining whether to apply § 2K2.1(b)(2) in situations in which the defendant is not the sports enthusiast or collector.

statute, "after reviewing all available relevant materials, the court is still left with an ambiguous statute"). The ambiguity is "grievous" because refusing to consider the guideline as a result of a narrow interpretation results in a significantly higher base level offense and corresponding sentence and does not address those cases in which a prohibited person is convicted of only constructive possession of a firearm. *See United States v. Onheiber*, 173 F.3d 1254, 1256 (10th Cir. 1999) (stating that "[t] he rule of lenity . . . applies only in cases where there is a grievous ambiguity or uncertainty in the language and structure of a provision" ) (quotations omitted); *see also United States v. Diaz*, 989 F.2d 391, 393 (10th Cir. 1993) (finding ambiguity because sentencing court could take one of two approaches to calculate sentence and holding that rule of lenity applies to sentencing guidelines). We conclude that the rule of lenity requires consideration of the guideline in situations in which the defendant is not the sports enthusiast or collector but his possession is solely associated with or related to lawful sporting or collection purposes (i.e., he or she has not used the firearm in a manner inconsistent with those lawful purposes), such as in transporting or holding the firearm for another's lawful sporting or collection purpose. *See United States v. Martinez*, 946 F.2d 100, 102 (9th Cir. 1991) (rule of lenity in criminal context requires court to infer rationale most favorable to defendant and construe

guidelines accordingly); *United States v. Blackburn*, 940 F.2d 107, 109 (4th Cir. 1991) (accord).

Because the government contested Mr. Mojica's version of the surrounding circumstances relevant to lawful sporting purposes, we must remand to the district court for a hearing in which both the government and Mr. Mojica may present sworn testimony. The court then must make findings and conclude whether those findings support application of § 2K2.1(b)(2). If § 2K2.1(b)(2) applies, Mr. Mojica's base level offense is 6 and should be further reduced by the two-point reduction the court has already granted for acceptance of responsibility. *See* Tr. at 4. At criminal history category V, the guideline range is four to ten months, but because the range falls within Zone B, the maximum term of imprisonment would be no more than six months. *See* U.S.S.G. Sentencing Table; U.S.S.G. § 5B1.1, comment. (n.1(b)). Mr. Mojica has apparently been in custody since his arrest in November 1998. *See* Tr. at 3. Because Mr. Mojica will have already served the maximum sentence if he is entitled to application of § 2K2.1(b)(2), the district court must expedite his resentencing proceedings.

The sentence of the United States District Court for the District of Utah is VACATED and the case is REMANDED for further proceedings consistent with this opinion.