**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 20 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

CARLOS COLLINS,

      Defendant - Appellant.

No. 01-4196

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:01-CR-175-W)**

---

Submitted on the briefs:[*]

Steven B. Killpack, Federal Public Defender, and Scott Keith Wilson, Assistant Federal Public Defender, Salt Lake City, Utah, for the Defendant-Appellant.

Paul M. Warner, United States Attorney, and Felice John Viti, Assistant United States Attorney, Salt Lake City, Utah, for the Plaintiff-Appellee.

---

Before **EBEL, PORFILIO** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

    [*]At the parties' request, the case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).

Carlos Collins pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and was sentenced to eighteen months' imprisonment, followed by twenty-four months' supervised release.[1] On appeal, Collins disputes only the calculation of his sentence, arguing that the district court erred in refusing to apply a reduction in base offense level applicable to defendants who "possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition." U.S.S.G. § 2K2.1(b)(2). We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. Because we conclude that the district court failed to properly examine surrounding circumstances in determining whether the purpose behind Collins's possession was solely a lawful, sporting one, as is required by the Sentencing Guidelines, we vacate Collins's sentence and remand for resentencing.

## I

On November 21, 2000, Collins took his automobile to a repair shop in Blanding, Utah to have some repair work done. Finding himself without the means to pay for the repairs, Collins left his hunting rifle, a Winchester Model

---

[1] Collins is a felon, having pled guilty to a third-degree felony of theft in 1987 after stealing two saddles from a barn.

700, 30-06, as security for payment. Three days later, Collins returned, paid the remaining $200 he owed on the car, and retrieved his rifle. On December 4, 2000, Collins returned to the repair shop for additional repairs and once again used his rifle as collateral for the balance of the debt owed. The rifle was eventually taken from the shop by FBI agents and Collins was arrested.

In May 2001, Collins pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At the sentencing hearing, Collins moved for application of U.S.S.G. § 2K2.1(b)(2), which provides, in pertinent part:

> If the defendant . . . possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.

(emphasis added). U.S.S.G. § 2K2.1(b)(2), cmt. n.10 further provides:

> Under Subsection (b)(2), "lawful sporting purposes or collection" as determined by the surrounding circumstances, provides for a reduction to an offense level of 6. Relevant surrounding circumstances include the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law.

(emphasis added). The district court denied Collins's motion and applied the standard base offense level of fourteen, with a two-level reduction for acceptance of responsibility, resulting in a net offense level of twelve, criminal history category III. Collins received a sentence at the midpoint of the corresponding

guideline range: eighteen months' imprisonment, followed by twenty-four months' supervised release. If § 2K2.1(b)(2) had been applied, Collins would likely have had a base offense level of six, and a net offense level of four, criminal history category III.

In denying Collins's motion for application of the reduction, the district court focused on Collins's use of the gun as collateral, reasoning that use of the rifle to secure a promise to pay for automobile repairs precludes, of itself, application of the offense-level reduction allowed by § 2K2.1(b)(2) because it demonstrates that the purpose of possession was not "solely" a sporting one. Apart from the two instances in which Collins used the gun as collateral, there is no evidence to suggest that Collins's purpose in possessing the gun was anything other than a lawful sporting one. He had a hunting permit from the Ute tribe and had been hunting with the weapon before. There was no evidence of any unlawful use.

We review the district court's factual determinations for clear error, United States v. Dudley, 62 F.3d 1275, 1276 (10th Cir. 1995), and its interpretation and application of the Sentencing Guidelines de novo, United States v. Mojica, 214 F.3d 1169, 1171 (10th Cir. 2000). It is the defendant's burden to show the applicability of U.S.S.G. § 2K2.1(b)(2). Dudley, 62 F.3d at 1276.

**II**

According to the government, because Collins used his rifle as collateral in two isolated instances to secure repairs to his automobile, he used his firearm in a manner inconsistent with possession "<u>solely</u> for lawful sporting purposes." U.S.S.G. § 2K2.1(b)(2) (emphasis added). Under this reading of the provision, any legal non-sporting use, even in the broader context of an overall lawful sporting purpose, precludes application of § 2K2.1(b)(2). Thus, it is the government's position that it is actual use that is largely determinative of whether §2K2.1(b)(2) is applicable. According to this view, Collins's inconsistent use transformed his purpose for possessing the gun and rendered § 2K2.1(b)(2) inapplicable. See <u>United States v. Clingan</u>, 254 F.3d 624, 626 (6th Cir. 2001) (holding that the repeated sale of firearms was inconsistent with possession solely for collection because defendant used the firearms "for the competing purpose of converting used automobiles into currency by using firearms as bartering tools"). To the government, § 2K2.1(b)(2) is unambiguous and must be construed according to its plain meaning.

We disagree that the "plain meaning" of the provision leads to the result urged by the government. The text of the provision requires a defendant to show two things: (1) that the defendant "<u>possessed</u> all ammunition and firearms solely for lawful sporting purposes or collection" <u>and</u> (2) that he "did not unlawfully

- 5 -

discharge or otherwise unlawfully <u>use</u> such firearms or ammunition."  U.S.S.G. §

2K2.1(b)(2) (emphasis added).  We note that the provision makes a distinction

between possession and use; the provision must not be interpreted such that this

distinction collapses, rendering part of the provision a nullity.  <u>See</u> <u>Oxy USA, Inc.</u>

<u>v. Babbitt</u>, 268 F.3d 1001, 1006 (10th Cir. 2001) (stating that courts must avoid,

"wherever possible, a statutory interpretation that would render superfluous other

provisions in the same enactment" (quotation omitted)); <u>see also</u> <u>Lamb v.</u>

<u>Thompson</u>, 265 F.3d 1038, 1051 (10th Cir. 2000) (reiterating the "cardinal

principle that it is our duty to give effect, if possible, to every clause and word of

a statute rather than to emasculate an entire section" (quotations and alteration

omitted)).

As to the first element, possession, the guideline does not indicate whether

"purpose" is to be considered as of a particular moment or within the entire

context of the defendant's possession.  However, comment ten to § 2K2.1(b)(2)

indicates that "lawful sporting purposes" is to be determined by reference to

"surrounding circumstances."  The language of the comment suggests that courts

need to conduct a broad analysis of the factual context before determining

whether the provision can be applied.  Indeed, there would be no need to look to

"surrounding circumstances" if any instance of legal, non-sporting use

automatically rendered the provision inapplicable.  Accordingly, we have stated

that examination of surrounding circumstances "is mandated." Mojica, 214 F.3d at 1173. The district court's focus on the word "solely" in the first half of the provision eviscerates any distinction between possession and use and would render the second part of the provision redundant because any non-sporting use, lawful or otherwise, would preclude application of the provision.

Comment ten indicates that one aspect of "surrounding circumstances" is "actual use." U.S.S.G. § 2K2.1(b)(2), cmt. n.10. Accordingly, we have noted that actual or intended use is an important factor in determining the purpose of possession. Mojica, 214 F.3d at 1172. However, while the purpose of possession may be informed by actual use, the fact that a firearm has inherent monetary value that Collins exploited briefly on two occasions does not alter the nature of his purpose in possessing the firearm in the first place. Actual use is but one of the "surrounding circumstances" by which the meaning of "lawful sporting purpose" is to be evaluated. "[T]he application note requires the court to examine the totality of the circumstances, including the specific circumstances of possession and actual use, rather than relying on a single factor to preclude application of the guideline." Id. While consistent and repeated non-sporting use would suggest that one of the purposes of possession was a non-sporting one, precluding application of § 2K2.1(b)(2), that is not the case here. Momentary exploitation of a rifle's inherent monetary value or physical properties within the

broader context of possession for lawful sporting purposes should not, ipso facto, preclude application of the provision where the firearm has never been used as a firearm for offensive or defensive purposes, or for any unlawful purpose. As for the second element, unlawful use, it is uncontested that Collins did not use or discharge the firearm in an unlawful manner.[2]

This reading of § 2K2.1(b)(2) is consistent with the plain meaning and purpose of the provision. We have noted that this provision is "clearly intended to punish innocent possession and use of a firearm less severely, and improper use more severely." Mojica, 214 F.3d at 1172 (quoting United States v. Jones, 158 F.3d 492, 501 (10th Cir. 1998)). Mojica stands for the proposition that § 2K2.1(b)(2) should be read broadly to encompass circumstances that are consistent with the provision's intent to provide a lesser punishment for possession of a firearm that is more benign. Even if § 2K2.1(b)(2) were ambiguous as applied to Collins's situation, strictly construing any ambiguity in

---

[2] We stress that, contrary to that which is suggested by the dissent, our reading of § 2K2.1(b)(2) does not render any lawful or innocent use subject to the reduction. Section 2K2.1(b)(2) is not a "'catchall' guideline applicable to all innocent purposes for possessing a firearm." Mojica, 214 F.3d at 1172. Rather, as stated herein, following the plain language of the statute, a court is to look to: (1) the purpose behind the defendant's possession; and (2) whether there is any unlawful use. While any unlawful use would automatically preclude application of the provision, lawful use may or may not, depending on the purpose of a defendant's possession, as determined by surrounding circumstances.

§ 2K2.1(b)(2), which the district court appears to have done, is "grievous because refusing to consider the guideline as a result of a narrow interpretation results in a significantly higher base level . . . ." Mojica, 214 F.3d at 1174. Thus, any ambiguity cuts in favor of Collins.

While the government's approach is not without support in the case law of our sister circuits, most of the cases cited by the government have taken a broader, more contextual approach to analyzing whether the purpose of possession was solely a lawful sporting one. In United States v. Clingan, 254 F.3d 624 (6th Cir. 2001), for example, cited by the government for the proposition that any use for financial purposes precludes application of the reduction, the court looked to the surrounding circumstances and concluded that defendant's overall purpose was financial. Because the defendant acquired thirteen firearms in a three-month period and sold six of them to pawnshops, it was clear that his purpose in possessing the firearms was to use them as bartering tools. Id. at 626. In United States v. Solomon, 274 F.3d 825, 828 (4th Cir. 2001), the court stated that the provision "permits a reduction in offense level only if a firearm was possessed solely for lawful sporting purposes or collection—and no other purpose" (quotation and emphasis omitted). However, the case was remanded because there was no evidence in the "surrounding circumstances" that the gun in question (a 9mm pistol) was ever possessed for sporting or collection purposes. In the

instant case, in contrast, there was ample evidence that the gun was acquired and used for hunting purposes. Thus, the cases cited by the government support the government's argument in result (refusal to apply the reduction), but not in analytical method: they support the view that courts must look to the broad context of possession to determine whether application of the provision is precluded.

**III**

We conclude that the district court was incorrect to find that application of § 2K2.1(b)(2) was precluded by two instances of lawful, non-sporting use. On remand, the district court should look to "surrounding circumstances" to determine whether the purpose of Collins's possession was solely a lawful sporting one and whether any use was unlawful. Collins's sentence is **VACATED** and the case is **REMANDED** for resentencing.

01-4196, *United States of America v. Collins*

**PORFILIO**, Senior Circuit Judge, dissent.

I respectfully dissent. I believe the court's interpretation of U.S.S.G. § 2K2.1(b)(2) is fatally flawed because it broadens the scope beyond the guideline's intended purpose.

If I correctly understand the court's opinion, it is predicated upon the hypothesis that § 2K2.1(b)(2) draws a distinction between possession and use of a firearm, and although it restricts possession to lawful sporting or collection purposes, it still applies to any use of a firearm that is lawful. Hence, because using a firearm as collateral is not unlawful, defendant's use of the weapon for that purpose was lawful. The court therefore concludes § 2K2.1(b)(2) should have been employed by the district court in assessing defendant's sentence. Respectfully, I believe this construction of the guideline ignores its plain meaning, purpose, and scope.

We must start by acknowledging that Congress has made unlawful any possession of a firearm by a person convicted of a felony. 18 U.S.C. § 922(g)(1). Nonetheless, the Sentencing Commission determined that for sentencing purposes, there are circumstances in which possession of a firearm is benign. *United States v. Mojica*, 214 F.3d 1169, 1172 (10th Cir. 2000) (recognizing the intent of the Commission to make punishment proportional to specific illegal conduct). Yet, as

we noted in *Mojica*, the lenience afforded by the Commission is to be applied only when a firearm is used for sporting or collection purposes.

> We conclude that the rule of lenity requires consideration of the guideline in situations in which the defendant is not the sports enthusiast or collector but his possession is solely associated with or related to lawful sporting or collection purposes (i.e., he or she has *not used the firearm in a manner inconsistent with those lawful purposes*).

*Id.* at 1174 (emphasis added).

That the use aspect of the guideline is applicable only to possession solely for lawful sporting purposes or collection is a view shared by other circuits. In *United States v. Shell*, 972 F.2d 548, 552 (5th Cir. 1992), a case in which the defendant, as here, was convicted of possession by a felon under 18 U.S.C. § 922(g)(1), the court held that lawful "use" under the guideline, was limited to "sporting" use or collection. Construing §§ 2K2.(b)(1) and (2), the court stated:

> Both of the subject guideline provisions recognize that possession of a firearm is a physical fact and is always illegal if the possessor is a felon; but that in addition to the physical fact of possession there is the subjective quality of the possession, determined by the use intended by the possessor. This is better understood by recognizing that the sentencing levels established for the guidelines presume that when the person physically possessing the firearm is a felon the purpose or intended use is nefarious whether it be for armed robbery, aggravated assault, facilitating a drug transaction or the like. The guidelines nevertheless recognize the possibility that even a felon's acquisition or possession of a firearm can be benign when the intended use of the gun is "solely" for one of two purposes that would be lawful were the possessor not a felon: either (1) sporting or recreational use, such as hunting, target practice or competition; or (2)

gun collecting – like hunting or target practice, a specialized use of a gun legitimately acquired or possessed.[1]

The point of this analysis is to make clear that the reduction provisions of the guidelines for felons in possession do not turn on the axiomatic truism that a felon can never lawfully possess a firearm. Rather, the availability of the reduction turns on the purpose or use for which the firearm is acquired or possessed *and* the lawfulness of such use if it were to be exercised by a citizen not under *any* legal disability–*lawful* hunting, *lawful* target practice, or *lawful* gun collecting.

*Id.* (emphasis in original).  *See also* **United States v Bristow**, 110 F.3d 754, 759 (11th Cir. 1997) (holding "the district judge lacked authority to depart downward because the Sentencing Guidelines specifically forbid a downward departure for economic reasons," even though defendant only *once* had used a lawfully possessed firearm as collateral to pay his debt); **United States v. Wilson**, 878 F.2d 921, 924 (6th Cir. 1989) (where felon possessed firearm as collateral for an unpaid debt, ruling "that under guideline section 2K2.1(b)(2) the only 'intended lawful use' which would support a decrease in the offense level is sport or recreation"); **United States v. Miller**, 224 F.3d 247, 252 (3rd Cir. 2000) (rejecting defendant's argument that he was entitled to a § 2K2.1(b)(2) reduction because he had possessed the rifle for sporting purposes *up until* the moment of the conduct that led to his conviction); **United States v. Ramirez-Rios**, 270 F.3d 1185, 1187 (8th

---

[1]Notwithstanding the fundamental logic employed by the Fifth Circuit, I would not read the guideline to include words not employed by the Commission, such as "target practice or competition."

-3-

Cir. 2001) (no reduction because defendant possessed gun for self-protection); *United States v. Halpin,* 139 F.3d 310, 311 (2nd Cir. 1996) (same); *United States v. Cousens,* 942 F.2d 800, 803 (1st Cir. 1991) (same); *United States v. Wyckoff*, 918 F.2d 925, 928 (11th Cir. 1990) (same).

These courts recognize that when the Commission conceived the acts of hunting or collecting to be "benign," it did not intend to do so for just *any* "lawful" use of a firearm by a convicted felon. Although the Commission could recognize that benign nature of those acts by moderating the punishment, the language it employed in doing so is quite specific and limited and excludes economic hardship. To hold to the contrary would render the guideline meaningless. Had the Commission intended to make *any* lawful use of a firearm subject to the reduction, it would not have emphasized "sporting purposes" or "collection." The Sixth Circuit agrees: "If the Commission had intended to allow for the reduction for any innocent possession, it would not have needed to add the use of 'collecting' to the list of lawful uses in section 2K2.2." *Wilson,* 878 F.2d at 925.

There is an additional ground upon which I disagree with the court. Citing application note 10 to § 2K2.1(b)(2), the court supports its analysis with the notion the "lawfulness" of the possession is governed by the "surrounding circumstances." While that is certainly correct, there is nothing contained in

-4-

application note 10 which suggests those "circumstances" encompass acts in addition to those specified in the guideline itself. Indeed, in reference to application note 10, the Third Circuit has instructed:

> In our view, by authorizing the courts to inquire into the "actual use" to which the defendant put the firearms in question, the Sentencing Commission has evinced its intent to extend the relevant inquiry (i.e., whether the defendant possessed all firearms for lawful sporting purposes) to the conduct giving rise to the instant conviction.

*United States v. Miller*, 224 F.3d 247, 252-53 (3rd Cir. 2000).

I believe the court has drawn a faulty distinction between the concepts of use and possession. The only way to do so would be to imply the existence of language not adopted by the Commission in the guideline. Such an interpretation is beyond our capacity. *Mojica*, 214 F.3d at 1171 (*citing 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596 (1951), for the proposition that the guidelines should be applied "without adding or subtracting words from the statutory language"). To the extent the court believes *Mojica* mandates a "broad analysis" of the facts and circumstances of the defendant's use of his weapon, I disagree. Nothing we have said in *Mojica* or elsewhere permits our straying into consideration of lawful uses other than hunting or collecting when examining the surrounding circumstances.[2]

---

[2]Indeed, we must remember *Mojica* dealt with a defendant who transported a rifle that his brother obtained to go hunting. *Mojica*, 214 F.3d at 1170. Thus, the "surrounding circumstance" was that the firearm in his possession was received for hunting – a lawful purpose by definition.

Although in this case we might regard defendant's use of his firearm as benign, and thus subject to lenience in sentencing, this is not a judgment for us to make. The defendant's possession of the firearm was illegal as a matter of law. Whether his use of the gun to secure his payment of a debt should be regarded as benign and subject to lenient treatment in sentencing is for the Commission to decide in the first instance. I would affirm the judgment of the district court.